**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-01939-NYW

ZACHARY A. CHESSER,

     Plaintiff,

v.

DIRECTOR FEDERAL BUREAU OF PRISONS,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

     This action is before the court on Defendant Director of Federal Bureau of Prisons'
("Defendant" or "BOP") Motion to Dismiss Third Amended Complaint (the "Motion to
Dismiss"). [#67, filed Aug. 3, 2016]. This Magistrate Judge considers the Motion to Dismiss
pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated January 7, 2016. [#37]. The
court concludes that oral argument will not materially assist in the resolution of this matter.
Accordingly, following a careful review of the motion, the associated briefing, the entire case
file, and the applicable case law, the Motion to Dismiss is GRANTED IN PART and DENIED
IN PART.

**PROCEDURAL HISTORY**

     The court has discussed the background of this case in several prior orders, *see, e.g.*,
[#20; #24; #53], and will only discuss it here as it relates to the pending motion. Plaintiff is an
ADMAX prisoner currently incarcerated at the United States Penitentiary ("USP") located in
Florence, Colorado ("ADX"), who was convicted of communicating threats, soliciting others to

threaten violence, and providing material support to terrorists and terrorist organizations.  *See* [#1-1; #58 at ¶ 5; *Chesser v. Walton*, 3:12-cv-01198-JPG-PMF (S.D. Ill.) ("*Chesser I*"), ECF No. 236 at 3].[1]  Plaintiff initiated this civil action on December 22, 2014, in the United States District Court for the District of Columbia ("D.C. District Court").  [#1-1].  Plaintiff, a Muslim, alleges that the BOP has substantially burdened his exercise of religion in violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1 *et seq.*  *See generally* [*id.*; #58].  On September 8, 2015, the D.C. District Court transferred Plaintiff's case to this court, based on Defendant's motion pursuant to 28 U.S.C. § 1404.  [#1].

Plaintiff filed an Amended Complaint on October 7, 2015.  [#8].  Per Magistrate Judge Gallaher's instruction [#20], Plaintiff filed a Second Amended Complaint on November 20, 2015.  [#22].  Plaintiff's Second Amended Complaint alleged that:  (1) BOP Program Statement 5360.09's ban on religious gatherings amounts to a violation of the RFRA; (2) BOP Program Statement 5360.09's ban on religious gatherings amounts to a violation of the Establishment Clause of the United States Constitution; (3) Defendant's policy of housing Muslims with terrorism ties in long-term solitary confinement violates RFRA; and (4) Plaintiff's specific confinement substantially burdens the exercise of his religious beliefs.  [*Id.*].  The Honorable Lewis T. Babcock dismissed Mr. Chesser's first and second claims as duplicative of claims in a separate pending federal lawsuit in the United States District Court for the Southern District of Illinois ("Southern District of Illinois"), *Chesser I*, but directed that claims three and four be drawn to a presiding judge.  [#24 at 4].  The action was then drawn to the undersigned Magistrate Judge.  [#25].

---

[1] [#_] is an example of a convention the court uses when referring to documents in the instant matter, whereas [ECF. No. _] is a convention the court uses to refer to documents in other proceedings.

On March 25, 2016, the court issued an Order denying Plaintiff's Motion to Reconsider Dismissal of Counts 1 and 2 [#32], Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 22] Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) [#42], and Defendant's Motion to Stay Discovery [#44] (but staying the entry of a Scheduling Order and discovery pending the filing of an answer); and granting in part Plaintiff's Motion for Leave to Amend [#46]. *See* [#53]. Pursuant to that Order, Plaintiff filed his Third Amended Complaint on June 9, 2016, which is the operative complaint in this matter. [#58]. Mr. Chesser's Third Amended Complaint levies two claims against Defendant for violations of the RFRA, because the BOP has a national policy of "holding inmates in solitary confinement due to their ties to terrorism" (the "Policy") (Claim III) and because Plaintiff's confinement in ADX substantially burdens the exercise of his sincerely held religious beliefs (Claim IV). *See* [*id.*].

## FACTUAL BACKGROUND[2]

Plaintiff alleges that Islam "obligates and encourages a number of religious gatherings and interactions [*e.g.*, group prayer, religious classes, religious conversations, religious celebrations, and other various religious gatherings]. . . . [that] [] should be done with other Muslims. . . . [and] should be done as much as possible." [*Id.* at ¶ 1]. According to Plaintiff, the BOP has a "policy and/or practice" whereby an inmate's "ties to terrorism" are a "but-for reason" for the inmate's placement in long-term solitary confinement.[3] [*Id.* at ¶ 2]. Plaintiff continues that the BOP implements the Policy at the ADX, the administrative facility in

---

[2] The following facts, drawn from Plaintiff's operative Complaint, are accepted as true and viewed in a light most favorable to Plaintiff. *See Barnes v. Harris*, 783 F.3d 1185, 1191–92 (10th Cir. 2015).

[3] Plaintiff alleges that long-term solitary confinement means confining an inmate to her cell for more than "half a day" absent a disciplinary reason for doing so. *See* [#58 at ¶ 2 n.1].

Thompson, Illinois,[4] in the Special Housing Units ("SHUs"), and the Special Management Units ("SMUs").  [*Id.* at ¶ 3].  For example, factors relevant to placement in the ADX—BOP's most restrictive facility—include whether:

> The inmate is subject to restrictive conditions of confinement as a result of a Special Administrative Measure, pursuant to 28 C.F.R. §§ 501.2 or 501.3; or based on documented reliable information from a government agency that the inmate was convicted of, charged with, associated with, or in any way linked to terrorist activities and, as a result, presents national security management concerns which cannot adequately be met in an open population institution.

[*Id.* at ¶ 4; #67-10 at 3].

Prior to his placement at the ADX, Plaintiff served approximately three years at the Communications Management Unit ("CMU") at USP-Marion.  [#58 at ¶ 8].  Plaintiff avers that the BOP accused him of being a terrorist recruiter while at USP-Marion; of being a member of Jama'ah Ad-Da'wah As-Sahihah ("JDS"), a "terrorism-related security threat group;" and of being an organizer of group prayer—which the BOP allegedly considers a "method of terrorism recruitment."  [*Id.* at ¶¶ 6, 9].  Because of these accusations, the BOP issued Mr. Chesser several incident reports—four for organizing group prayer and three related to his involvement with JDS (*e.g.*, one for assault of another inmate, one for extortion of prison officials, and one for possession of "code instructions").  [*Id.*].  Similarly, the BOP "rejected dozens of [Plaintiff's] communications because they felt they promoted terrorism."  [*Id.* at ¶ 7].

In approximately June 2014, the BOP transferred Plaintiff to the ADX for his alleged involvement with JDS and other activities deemed related to terrorism.[5]  [*Id.* at ¶ 9].  Plaintiff

---

[4] According to Defendant, USP-Thompson "is still in the process of being activated, and for that reason, no inmates are due to be referred there, and there are accordingly no BOP policies or guidance on what criteria to consider in inmate referrals."  [#67 at 10 n.6].

[5] Plaintiff alleges in his operative Third Amended Complaint that BOP personnel informed him that his filing this lawsuit confirmed that he sought to recruit terrorists while housed at USP-Marion.  *See* [#58 at ¶ 31].

also alleges that he spent several months in the SHU "over his ties to terrorism."  [*Id.* at ¶ 10].

However, while Plaintiff is not housed in the SMU or placed on Special Administrative

Measures ("SAMs"), he meets the criteria for both, and the BOP allegedly uses an inmate's ties

to terrorism as a "cause to put them in SAMs."  [*Id.* at ¶ 11].  Nonetheless, Plaintiff asserts that

his placement at the ADX is equivalent to long-term solitary confinement and that the conditions

at the ADX make it impossible for Plaintiff to engage in religious activities.  [*Id.* at ¶ 12–14].

Plaintiff continues that, even if he leaves ADX, there is always the risk of returning due to the

BOP's Policy.  [*Id.* at ¶ 13].[6]

Plaintiff alleges that the BOP refers "non-terrorist inmates" to the ADX only when the

inmate's conduct is so egregious, *i.e.*, murdering another inmate.  [*Id.* at ¶ 19].  In addition, that

only a few Muslim inmates convicted of being terrorists have ever engaged in violence against

BOP officials, compared to the large number of instances of violence perpetrated by

"non-terrorist inmates."  [*Id.* at ¶¶ 21–27].  According to Plaintiff, the ADX used to be an open

population facility until "a few non-terrorist inmates engaged in brutal prison violence."  [*Id.* at ¶

32].[7]

Plaintiff maintains that the BOP's primary concern relating to terrorist-inmates is their

communication and influence within as well as outside the prison.  [*Id.* at ¶ 28].  However,

placement of terrorist-inmates at the ADX does not address these concerns because, according to

Mr. Chesser, he has a greater ability to communicate and influence others while incarcerated at

the ADX versus the CMUs.  [*Id.* at ¶¶ 29–31].  Thus, Mr. Chesser alleges, the BOP's Policy does

---

[6] Plaintiff also disputes the issued incident reports regarding his involvement with JDS and his alleged recruiting of terrorists while in BOP custody.  *See* [#58 at ¶¶ 15–18].

[7] Plaintiff misnumbers the paragraphs of his operative Third Amended Complaint by designating paragraph 32 as 22.  *See* [#58 at 16–17].  For clarity purposes, the court identifies the paragraphs following 31 in numerical order, despite Plaintiff's mislabeling.

not further a compelling interest.   [*Id.* at ¶ 33].   Moreover, Plaintiff contends that there are several less-restrictive alternatives that the BOP could employ that would not substantially burden Muslim inmates' sincerely held religious beliefs, especially when compared to other countries' treatment of Muslim inmates.   *See* [*id.* at ¶¶ 35–40].   In addition, the conditions of the ADX substantially burden *his* sincerely held religious beliefs.   [*Id.* at ¶¶ 41–44].   Therefore, the BOP's Policy, in addition to the conditions at ADX, violate the RFRA.   [*Id.* at ¶ 40; *id.* at 23].

On August 3, 2016, Defendant filed its Motion to Dismiss.   [#67].   Defendant argues that the court should dismiss Plaintiff's Claim III because there is no BOP policy to house inmates with ties to terrorism in long-term solitary confinement nor has the BOP applied any such policy to Mr. Chesser, and, in addition, Plaintiff fails to allege a plausible RFRA claim under Claims III and IV.   *See* [*id.* at 9–10, 14].   Plaintiff filed a response and Defendant a reply. [#70; #73].   Because the Motion to Dismiss is ripe for resolution, the court considers the Parties' arguments below.

## LEGAL STANDARD

### I.   *Pro se* Litigants

Because Plaintiff proceeds *pro se*, this court liberally construes his pleadings.   *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).   However, the court cannot act as an advocate, even for a *pro se* litigant.   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party.   *See Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir.2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## II.   Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).   Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.   *Image Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).   Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject-matter jurisdiction.   Doing so is not a determination on the merits of the case; rather, it is a decision that the court lacks the authority to adjudicate the action.   *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).   A court that lacks jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).   The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.   *See Id.*   Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.   *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002.   Mere conclusory allegations of jurisdiction are insufficient.   *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   On the other hand, a court reviewing a factual attack may not

"presume the truthfulness of the complaint's factual allegations," and may consider affidavits and other documents to resolve disputed jurisdictional facts. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015) (quoting *Holt*, 46 F.3d at 1002–03). Nevertheless, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Groundhog*, 442 F.2d at 677; *see also Holt*, 46 F.3d at 1002 (observing, "the jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.").

### III.   Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even *pro se* litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Should the court receive and consider materials outside the complaint, the court may convert a Rule 12(b)(6) motion to a motion for summary judgment if the parties have notice of the changed status and the nonmovant responded by supplying its own extrinsic evidence. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). However, a district court may consider legal arguments contained in a brief in opposition to dismissal or documents referred to in the complaint that are central to a plaintiff's claim if the Parties' do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). In addition, the court may consider documents whose authenticity is undisputed subject to judicial notice, including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

## ANALYSIS

### I.   Plaintiff's Standing to Challenge the "Policy" – Claim III

To satisfy Article III's case or controversy requirement, the plaintiff must establish: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood of redressability by a favorable decision. *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (quotations and citations omitted). Accordingly, Mr. Chesser must allege an injury to a legally protected interest that is concrete and particularized and actual or imminent—*i.e.*, not conjectural or hypothetical—and one that is fairly traceable to Defendant, which this court can redress through a favorable

decision to Mr. Chesser. *US Magnesium, LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1165 (10th Cir. 2012) (quotations and citations omitted). Unlike constitutional standing, which implicates the court's subject-matter jurisdiction, prudential standing, conversely, is not a jurisdictional limitation. *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (quotations and citation omitted). Rather, "[t]he prudential standing doctrine encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights." *The Wilderness Soc.*, 632 F.3d at 1168 (internal quotations and citation omitted). Nevertheless, when evaluating a plaintiff's standing at the motion to dismiss phase, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (internal quotations and citation omitted).

Defendant argues for dismissal of Claim III because Plaintiff lacks constitutional as well as prudential standing. *See* [#67 at 10, 13]. First, Defendant avers that Plaintiff lacks constitutional standing because the BOP maintains no policy or practice of "holding inmates in long-term solitary confinement based solely on their ties to terrorism." [*Id.* at 10 (internal quotations omitted) (quoting #67-3 at ¶ 6), 12; #73 at 2]. Rather, the BOP evaluates each individual inmate on a case-by-case basis, considering several factors (including an inmate's ties to terrorism), prior to placing an inmate in a restrictive unit. *See* [#67 at 10; #73 at 2]. According to Defendant, an inmate's ties to terrorism are not the "but-for reason" for housing an inmate in the SHUs, SMUs, or the ADX, or for imposing SAMs. *See* [#67 at 10, 12; #73 at 2]. Thus, Plaintiff lacks standing to challenge a nonexistent policy. [#67 at 12–13].

Defendant continues that Plaintiff also lacks constitutional standing because he fails to allege an actual or imminent injury. *See* [*id.* at 13]. This is because the BOP transferred Plaintiff

to the ADX based on his own misconduct while incarcerated at USP-Marion—misconduct that satisfied BOP criteria for placement at the ADX, not because of Plaintiff's ties to terrorism.  [*Id.* at 11–12, 13; #73 at 2–4].  In addition, because Plaintiff is not currently subject to placement in the SHUs, SMUs, or subject to SAMs, his allegations that he may someday be subject to such restrictions are too speculative to satisfy the injury in fact requirement.  [#67 at 13].

Second, Defendant argues that Plaintiff lacks prudential standing, as he is not the "real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure.  [*Id.* at 13–14].  Specifically, Mr. Chesser does not have standing to challenge conditions imposed on other inmates, conditions that do not apply to Plaintiff himself.  [*Id.*].

In response, Plaintiff argues that he has standing to challenge the Policy, because:  (1) he is challenging the national policy of placing terrorist-inmates in solitary confinement based on their ties to terrorism, not the specific conditions of confinement at other facilities; (2) he is challenging the BOP's use of an inmate's ties to terrorism as a *factor* in housing terrorist-inmates in solitary confinement, not that their ties to terrorism "is the *sole* factor in all of the BOP's application" of the Policy; and (3) he sufficiently alleges that Defendant applied the Policy to him when placing him in the SHU and then transferring him from USP-Marion to the ADX.  *See* [#70 at 5–8].[8]  Specifically, Plaintiff avers that BOP personnel informed him that the real reasons

---

[8] Plaintiff also argues that the doctrine of collateral estoppel precludes Defendant's arguments that the Policy does not exist.  [*Id.* at 47].  This court refers to collateral estoppel as issue preclusion.  *See Taylor v. Sturgell,* 553 U.S. 880, 892 n.5 (2008).  Specifically, Plaintiff relies on a similar argument raised in *Royer v. Federal Bureau of Prisons* where a BOP prisoner challenged the BOP's so-called "terrorist inmate policy," which allegedly placed all terrorist-inmates in administrative segregation or in CMUs.  934 F. Supp. 2d 92, 95 (D.D.C. 2013).  However, the *Royer* holding is inapposite to the instant case for a number of reasons, including the fact that Mr. Royer challenged the "terrorist inmate policy" as procedurally deficient under the Administrative Procedures Act, and the *Royer* court did not actually adjudicate the existence of the alleged "terrorist inmate policy."  *Id.* at 99 (declining to address the BOP's argument, raised for the first time in its reply that the "terrorist inmate policy" did not exist).  Thus, the

for his placement in the ADX were his ties to JDS and being an influential terrorist recruiter,[9] evidenced by Warden Walton's detailed discussion of Plaintiff's ties to terrorism in his ADX referral memorandum, and that the BOP subjects a majority of terrorist-inmates to the Policy even though those inmates do not perpetrate offenses serious enough to warrant placement in solitary confinement. *See* [*id.* at 8–20].

For the following reasons, the court concludes that Mr. Chesser has standing to pursue Claim III, but only to the extent that it challenges the BOP's consideration of an inmate's ties to terrorism when transferring an inmate to the ADX. First, Mr. Chesser does not identify a *per se* BOP policy that automatically assigns inmates to restrictive units based solely on their ties to terrorism. *See, e.g.*, [#67-10 at ¶ 6 (declaration of Mark Collins, Associate Warden of FCF, attesting that there is no combination of policies, practices, or regulations that "effectively amounts to what Chesser alleges."), ¶ 7 (attesting that an inmate's ties to terrorism does not "automatically guarantee" placement in long-term solitary confinement)]. Thus, any interpretation of Claim III to that effect must fail as a matter of law.

Similarly, Plaintiff lacks standing (constitutional and prudential) to pursue Claim III to the extent it challenges the BOP's consideration of other inmate's ties to terrorism when transferring an inmate to SHUs or SMUs, or when imposing SAMs.[10] Although Plaintiff alleges

---

collateral estoppel doctrine does not preclude the BOP's argument as to the existence of the Policy in this case. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1221 (10th Cir. 2013).

[9] However, because Plaintiff raises these allegations for the first time in his response, the court will not consider them for purposes of its motion to dismiss analysis. *See, e.g.*, *In re Qwest Communications Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (explaining that the sufficiency of the plaintiff's allegations is based on those in the complaint, as "[t]he plaintiff[] may not effectively amend his Complaint by alleging new facts in his response to a motion to dismiss.").

[10] Under Title 28 of the Code of Federal Regulations, Section 501.3(a), the *Attorney General* may request that the Director of the Bureau of Prisons "authorize the Warden to implement

that he was housed in a SHU for seven months due to his ties to terrorism, he concedes that he is not currently housed in a SHU or SMU, or subject to SAMs. *See* [#58 at ¶ 11]. Further, it is not enough for Plaintiff to allege that he meets all the criteria for placement in a SMU or the criteria for SAMs, or that there are inmates with "fewer ties [to terrorism] . . . who are on SAMs" to sufficiently allege a concrete and particularized injury that is actual and imminent, *i.e.*, that Defendant will impose such restrictions on Plaintiff in the immediate future because they allegedly transferred him to the ADX because of his ties to terrorism.[11]  *See S. Utah Wilderness All.*, 707 F.3d at 1157 (stating that the alleged injury for purposes of standing must not be too speculative; rather, it must be "certainly impending"); *cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105–06 (1983) (holding that a plaintiff seeking prospective injunctive relief based on past wrongs must demonstrate that the past wrongs continue to present adverse effects, and that a real and immediate threat of future injury exists as a result of the defendant's conduct).  In addition, because Plaintiff is not presently housed in a SHU or SMU, or placed under SAMs, he lacks standing to challenge, on behalf of other inmates, the BOP's consideration of other inmates' ties to terrorism when transferring those inmates to a SHU or SMU, or when imposing SAMs. *See Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990) ("[T]o the extent a complaint

---

special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a); *see also* [#67 at 12].  However, the BOP can consider an inmate's SAMs when evaluating placement at ADX. *See* [#67 at 12].

[11] *But see Aref v. Holder*, 774 F. Supp. 2d 147, 158–159 (D.D.C. 2011), where the D.C. District Court held that an inmate had standing to challenge the conditions of confinement at a CMU, despite being transferred to a less restrictive facility, because the BOP placed the inmate in the CMU based solely on his underlying offense which was not going to change; thus, there was a "realistic threat that he might be redesignated to a CMU."  Here, however, it is BOP policy to place all "newly arrived inmates" to ADX in the SHU pending classification or reclassification [#67 at 12; #67-3 at ¶ 22; #67-13 at 4]; thus, it appears that Plaintiff's placement was not based solely on his ties to terrorism, and it does not appear, as in *Aref*, that there is a realistic and immediate threat that Plaintiff will be placed in a SHU for his ties to terrorism.

concerns 'inmates' rather than the plaintiff himself, it is dismissable for failure to allege the plaintiff's standing to proceed.")).

The court, however, reaches a different conclusion to the extent Claim III challenges the BOP's consideration of Plaintiff's ties to terrorism when transferring him to the ADX.   In his response, Plaintiff clarifies that Claim III challenges the BOP's policy of considering an inmate's ties to terrorism as one of several factors when transferring an inmate to restrictive units, rather than an automatic assignment based on the terrorism ties alone.  *See* [#70 at 6–7].  Further, Mr. Chesser contends that Warden Walton's ADX referral memorandum used his "terrorism ties as a 'but-for' justification" for his transfer to the ADX.  [*Id.* at 11–12].  Construing all inferences in favor of Plaintiff as is appropriate at this stage of the proceeding, Plaintiff's Third Amended Complaint supports these assertions.  To start, Plaintiff quotes BOP guidance relating to the transfer of inmates to the ADX, which identifies an inmate's ties to terrorism as one relevant factor for consideration [#67-10 at ¶ 6],[12] and Defendant concedes that individualized placement decisions may take into account an inmate's ties to terrorism or "his terrorism-related convictions."  [#67 at 10; #67-3 at ¶ 7].  Plaintiff continues that Claim III relates only to his transfer to the ADX, *see* [#70 at 5–6], and his operative Third Amended Complaint alleges that the BOP transferred him to the ADX based on not only his terrorism-related convictions, but based primarily on his participation in religious activities that the BOP considered terrorism-related—in violation of the RFRA.  *See* [#58 at ¶¶ 5–6, 9, 10, 12, 13].  Second, the court notes that the referral memorandum itself refers to his "history of subscribing to a radicalized Islamic philosophy and has maintained a consistent interest in radical forms of Islam," and contains significant discussion of Mr. Chesser's religion.  [#67-11 at 3].  Again, at the motion to dismiss

---

[12] Under Rule 12(b)(1), the court may consider materials outside the pleadings to resolve jurisdictional issues.  *See Holt*, 46 F.3d at 1214.

phase, this court draws all inferences in favor of Mr. Chesser, and, in doing so, finds that dismissal at this stage is not appropriate.

Accordingly, the court interprets Claim III as alleging that the BOP (improperly) relied solely on Plaintiff's terrorism-related convictions and his participation in religious activities (in accordance with the BOP's guidance) when transferring him to the ADX rather than considering all factors relevant to such a transfer, *e.g.*, threats and/or acts of significant violence. *See Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (holding that for purposes of standing at the motion to dismiss phase, the court must accept as true all material allegations of the complaint, and construe them in a light most favorable to the plaintiff). In doing so, the court concludes that Plaintiff sufficiently alleges an actual and imminent injury, *i.e.*, transfer to the ADX, allegedly based on his ties to terrorism and participation in religious activities deemed terrorism-related,[13] that is fairly traceable to Defendant and one that this court can redress upon a favorable decision. *See US Magnesium, LLC*, 690 F.3d at 1165.

Based on the foregoing, the court concludes that Plaintiff has standing to pursue Claim III to the extent Plaintiff challenges the BOP's consideration of an inmate's ties to terrorism, which allegedly includes Islamic religious activities, and that Defendant improperly relied solely on this factor when transferring Plaintiff to the ADX rather than considering all of the relevant factors. Therefore, Defendant's Motion to Dismiss Claim III based on Plaintiff's lack of standing is

---

[13] Plaintiff alludes to Warden Walton's ADX referral memorandum throughout his operative Complaint, and Defendant attaches what appears to be an undisputed copy of that memorandum to its Motion to Dismiss; thus, the court considers the exhibit without converting the Motion to Dismiss to one for summary judgment. *See Cty. of Santa Fe, N.M.*, 311 F.3d at 1035. In that memorandum, Warden Walton appears to discuss Plaintiff's ties to terrorism at length, which seems to support, at this phase, Plaintiff's allegations that the BOP relied overwhelmingly on his ties to terrorism when transferring him to the ADX as opposed to other relevant factors. *See* [#67-11].

GRANTED IN PART and DENIED IN PART, and the court now turns to whether Claim III, as limited, and Claim IV state plausible RFRA claims.

## II.   RFRA, 28 U.S.C. § 2000bb-1 *et seq.*

Section 2000bb–1(a) of the RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion."   42 U.S.C. § 2000bb–1(a).   "Thus, a plaintiff establishes a prima facie claim under RFRA by proving the following three elements:   (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion."   *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).   Mr. Chesser sufficiently alleges a substantial burden on his sincere exercise of religion if he alleges that Defendant's policy:   (1) requires participation in an activity prohibited by his sincerely held religious beliefs; (2) obstructs participation in conduct motivated by those beliefs; or (3) places "substantial pressure on an adherent" to act contrary to those beliefs.   *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1138 (10th Cir. 2013) (explaining that the Religious Land Use and Institutionalized Persons Act ("RLUIPA") adopts the RFRA's "substantial burden" standard) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).[14]   "The burden then shifts to the government to show that the 'compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'"   *Id.* at 1126 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 420 (2006)).   In addition, Defendant must establish that the

---

[14] Because RLUIPA incorporates RFRA's substantial burden standard, the court also looks to RLUIPA precedent in evaluating Mr. Chesser's RFRA claim. *Cf. Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) (observing that RLUIPA permits state prisoners "to seek religious accommodations pursuant to the same standard as set forth in RFRA."); *accord Dobson v. Sebelius*, 38 F. Supp. 3d 1245, 1254 (D. Colo. 2014) ("Under either act [RLUIPA or RFRA], the substantial burden standard is the same.").

substantial burden "is the least restrictive means" of furthering that interest.  *Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014).

For purposes of its Motion to Dismiss, Defendant concedes that Plaintiff's religious beliefs are sincerely held, and that he sufficiently alleges that his transfer to the ADX and the ADX's conditions of confinement impose a substantial burden on the exercise of his sincere religious beliefs.[15]  [#67 at 9 n. 5, 17 n.11].  Nonetheless, Defendant argues for dismissal of Claims III and IV, because Mr. Chesser fails to plead "facts plausibly showing the absence of a compelling security interest in housing him [at the ADX], or that the ADX security controls are not the least-restrictive means of furthering the BOP's compelling interest in this case."  [#67 at 17, 20; #73 at 8–10].  Defendant argues that it is not sufficient for Plaintiff to allege only a substantial burden; rather, Mr. Chesser must also plead sufficient facts from which this court could reasonably infer that the substantial burden is not in furtherance of a compelling governmental interest *and* is not the least-restrictive means of furthering that interest.  [#67 at 7–8].  Plaintiff responds that, although not required to do so, his operative Third Amended Complaint plausibly refutes the BOP's burden under the RFRA.  *See* [#70 at 34–36].  Nevertheless, for the reasons discussed below, this court concludes that Mr. Chesser states a plausible RFRA claim by sufficiently alleging a substantial burden on the exercise of his sincerely held religious beliefs.

### A.  Substantial Burden – Pleading Plausible RFRA Claims

As discussed, to state a prima facie RFRA claim, Mr. Chesser must allege facts establishing that Defendant "substantially burdened his sincerely-held religious beliefs."  *Ajaj v. Fed. Bureau of Prisons*, No. 08-CV-02006-MSK-MJW, 2011 WL 902440, at *3 (D. Colo. Mar.

---

[15] Because the court has narrowed Claim III, it focuses only on Defendant's arguments relevant to Plaintiff's claim as it relates to his transfer to the ADX.

10, 2011) (quotations and citations omitted).  In arguing for dismissal of Claims III and IV, Defendant contends that Mr. Chesser's alleging a substantial burden on the exercise of his sincere religious beliefs is not enough to state a plausible RFRA claim.  *See* [#67 at 7].  Rather, Mr. Chesser "must allege facts plausibly showing that a prison restriction substantially burdens his sincere exercise of religion, *and* that the restriction does not further a compelling governmental interest in his case or is not the least-restrictive means of doing so." [*Id.* at 9].

To support this position, Defendant relies on *Gee v. Pacheco* wherein the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") held that, in the context of a prisoner's First Amendment claim, to survive a 12(b)(6) motion:

> Mr. Gee must include sufficient facts to indicate the plausibility that the actions of which he complains were not reasonably related to legitimate penological interests.  This is not to say that Mr. Gee must identify every potential legitimate interest and plead against it; we do not intend that pro se prisoners must plead, exhaustively, in the negative in order to state a claim.  It is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.

627 F.3d 1178, 1188 (10th Cir. 2010).  In other words, a plaintiff must "'recite[] facts that might well be unnecessary in other contexts to surmount a motion to dismiss under Fed. R. Civ. P. 12(b)(6)'" when alleging a violation of her First Amendment rights.  *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Gee*, 627 F.3d at 1185).

Defendant urges this court to impose the pleading standard set forth in *Gee* to Mr. Chesser's RFRA claims and places great emphasis on the Tenth Circuit's Order in *Ghailani v. Lynch*, No. 15-1128 (10th Cir. Mar. 1, 2016), directing the parties to provide supplemental briefing on the issue of whether a plaintiff, to state a plausible RFRA claim, must allege that the substantial burden is not the least restrictive means of furthering a compelling governmental

interest.[16]  *See* [#67 at 7; #67-17 at 3 (citing *Gee*, 627 F.3d at 1187–88)].   However, the Tenth Circuit has yet to rule in *Ghalani*, and case law, as well as guidance, from this Circuit and others, suggests that a plaintiff need only allege a substantial burden on the exercise of her sincerely held religious belief at this pre-discovery phase.

For example, the Tenth Circuit has held that, on a motion for a preliminary injunction, a plaintiff need only prove a substantial burden on her exercise of religion to satisfy a likelihood of success on the merits—a showing that then shifts the burden to the government.  *See, e.g.*, *Hobby Lobby*, 723 F.3d at 1125–26 ("This burden-shifting approach applies even at the preliminary injunction stage."); *Kikumura*, 242 F.3d at 961 ("Once a plaintiff establishes a prima facie claim under RFRA, the burden shifts to the government").   In addition, guidance from this Circuit suggests, "[t]o survive a motion to dismiss" a plaintiff is "required to allege only . . . that [her] exercise of that [sincerely-held religious] belief has been substantially burdened by the government."   *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016) (citing *Abdulhaseeb*, 600 F.3d at 1312); *see also Robertson v. Biby*, 647 F. App'x 893, 897–98 (10th Cir. 2016) (holding that the defendants failed to rebut the plaintiff's well-pleaded allegation that prison policy substantially burdens his exercise of a sincerely-held religious belief; noting that it is the defendants' burden to show that the restriction "serves a compelling governmental interest and is the least restrictive means of furthering that interest." (internal quotations and citation omitted)).[17]   Notably, guidance from other Circuits also indicates that a plaintiff states a

---

[16] The precise issue in *Ghailani* reads: "to state a plausible claim under [RFRA], is a prisoner required to plead facts tending to show that a substantial burden on his or her exercise of religion is not in furtherance of a compelling governmental interest and is not the least restrictive means of furthering that interest?"  [#67-17 at 3].

[17] Other courts within the Tenth Circuit have followed this pleading standard at the motion to dismiss stage.  *See, e.g.*, *United States v. Jeffs*, No. 2:16-CR-82 TS, 2016 WL 6745951, at *3, *11 (D. Utah Nov. 15, 2016); *Krumm v. Holder*, No. 13CV0562 RB/SMV, 2014 WL 11497804,

cognizable RFRA claim merely by pleading facts that, taken as true, establish a substantial burden on her religion. *See, e.g.*, *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016) ("Because we think the indirect pressure the officers placed on Mack may very well have substantially burdened his religious exercise [*i.e.*, praying at work], we conclude that his allegations are sufficient to survive a motion to dismiss."); *Wieland v. United States Dep't of Health & Human Servs.*, No. 4:13-CV-01577-JCH, 2016 WL 98170, at *3 (E.D. Mo. Jan. 8, 2016) (holding that the plaintiff's allegations of a substantial burden were sufficient "to avoid dismissal [under Rule 12(b)(6)] at this stage in the proceedings," and that the plaintiff was not required to "disprove" the defendants' assertions of a compelling interest and least restrictive means); *Howe v. Burwell*, No. 2:15-CV-6, 2015 WL 4479757, at *15 (D. Vt. July 21, 2015) (holding that the plaintiff stated a plausible RFRA claim to survive a motion to dismiss by alleging a substantial burden; noting, "Plaintiff need not disprove the Federal Defendants' claims with regard to which they bear the burden of proof.").

Accordingly, the court concludes that to survive a motion to dismiss, Mr. Chesser must sufficiently allege that Defendant substantially burdened the exercise of his sincerely held religious beliefs. *See Williams*, 645 F. App'x at 699. Whether Mr. Chesser's RFRA claims can ultimately survive judgment on the merits, is a question better suited for dispositive motions, after the Parties have engaged in meaningful discovery. *Cf. Abdulhaseeb*, 600 F.3d at 1318 (explaining that it is not until the summary-judgment phase that the burden shifts to the defendant to prove that the substantial burden is the least restrictive way of furthering a compelling governmental interest); *accord Yellowbear*, 741 F.3d at 56 (recognizing that, "[t]hough Mr. Yellowbear has met his summary judgment burden [*i.e.*, raising a triable issue of

at *5 (D.N.M. Mar. 19, 2014); *Saunders v. Wilner*, No. 09-CV-00114-REB-KMT, 2010 WL 582373, at *9 (D. Colo. Feb. 18, 2010).

fact as to a substantial burden], . . . the burden of persuasion now shifts to the government.").
Thus, the court does not consider, at this phase, Defendant's arguments concerning a compelling
governmental interest or the least restrictive means for furthering that interest.

Here, for purposes of its Motion to Dismiss, Defendant "assumes [Mr.] Chesser has
alleged a substantial burden as to the ADX." [#67 at 17 n.11]. The court, in turn, holds that Mr.
Chesser sufficiently alleges a substantial burden on the exercise of his sincerely held religious
beliefs. As to Claim III, as limited *supra*, Mr. Chesser challenges the BOP's consideration of an
inmate's ties to terrorism as one of several factors when transferring an inmate to the ADX. *See*
[#58 at ¶ 4]. According to Mr. Chesser, the primary reason for his transfer to the ADX were his
ties to terrorism (rather than a consideration of other relevant factors), which allegedly included
his organization of group prayer and participation in other religious group activities that the BOP
deemed "terrorism-related." [*Id.* at ¶¶ 6, 9]. Because of the BOP's decision to transfer Plaintiff
out of USP-Marion and into the ADX, Mr. Chesser cannot engage in religious activities such as
group prayer, religious classes, religious gatherings, religious conversations, religious
celebrations, or general engagement with other Muslim inmates. *See* [*id.* at ¶¶ 1, 13]. Similarly,
Claim IV alleges that the conditions of confinement at the ADX substantially burden the exercise
of his sincerely held religious beliefs for the same reasons, *e.g.*, he cannot participate in any
daily, congregate prayer. [*Id.* at ¶¶ 1, 13, 31–32]. Construing the operative Third Amended
Complaint in favor of Plaintiff, these are sufficient allegations of a substantial burden on the
exercise of his sincerely held religious beliefs. *See Ajaj v. United States*, No. 15-CV-00992-
RBJ-KLM, 2016 WL 6212518, at *5 (D. Colo. Oct. 25, 2016) (concluding that the BOP's
prohibition of group prayer for Muslim inmates at the ADX constitutes a substantial burden
under the RFRA). Therefore, Defendant's Motion to Dismiss on Rule 12(b)(6) grounds is

DENIED.[18]   In so ruling, this court does not pass on the substantive merits of Plaintiff's claims or Defendant's defenses, as such consideration is not appropriate in the context of this instant Motion to Dismiss.

## CONCLUSION

Wherefore, for the reasons stated herein, **IT IS ORDERED** that:

(1)     Defendant's Motion to Dismiss [#67] is **GRANTED in part and DENIED in part**;

(2)     Claim III is **DISMISSED** to the extent it challenges a national BOP policy of automatically placing inmates in long-term solitary confinement due to their ties to terrorism;

(3)     Claim III is **DISMISSED** to the extent it challenges the BOP's consideration of other inmates' ties to terrorism when transferring those inmates to SHUs or SMUs, or when placing them under SAMs;

---

[18] Briefly, in his request for relief, Plaintiff seeks a permanent injunction that enjoins the BOP from considering an inmate's ties to terrorism as one of several factors when transferring that inmate to a restrictive unit. *See* [#58 at 23]. In doing so, Plaintiff explains in a footnote that he "will be invoking overbreadth doctrine and the doctrine where there is no legitimate application of a policy." [*Id.* at n.3]. Defendant argues that Plaintiff cannot bring a facial challenge to a non-existent policy. [#67 at 19]. However, as explained *supra*, the court interprets Claim III as a challenge to the BOP's consideration of an inmate's ties to terrorism as one of several factors when transferring an inmate to a restrictive unit, and the court limits the claim, based on Plaintiff's clarifications, to his transfer to the ADX. Additionally, Plaintiff makes no mention of an overbreadth challenge in his response. Nonetheless, to the extent Plaintiff seeks to bring an overbreadth challenge under Claim III, such a claim is dismissed because Plaintiff fails to allege that the policy is "impermissible in all, or at least the vast majority, of its intended applications." *United States v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008) (internal quotations and brackets omitted). Even if Plaintiff sufficiently alleges that the policy is unconstitutional under RFRA based on "some conceivable set of circumstances," this is "insufficient to render it wholly invalid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, any overbreadth challenge is DISMISSED. *See Curley v. Perry*, 246 F.3d 1278, 1282–85 (10th Cir. 2001) (holding that a court may *sua sponte* dismiss an inmate's complaint under § 1915(e)(2)(B)(ii) and Rule 12(b)(6) when it is patently obvious that she could not prevail on the facts alleged, and amendment would be futile).

(4)     Claim III **REMAINS** to the extent it challenges the BOP's consideration of Mr.

Chesser's ties to terrorism as the primary justification for transferring him to the

ADX in violation of the RFRA;

(5)     Claim IV **REMAINS** in its entirety;

(6)     The stay of pretrial discovery ordered pursuant to [#53] is **VACATED**;

(7)     A Status Conference is **SET** for March 23, 2017, at 10:00 a.m. to discuss pretrial

discovery and scheduling in this matter; and

(8)     A copy of this Order shall be sent to the following:

> Zachary A. Chesser #76715-083
> FLORENCE ADMAX
> U.S. PENITENTIARY
> Inmate Mail/Parcels
> PO BOX 8500
> FLORENCE, CO 81226

DATED:  February 22, 2017                          BY THE COURT:


                                                   s/ Nina Y. Wang
                                                   United States Magistrate Judge