IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01939-NYW

ZACHARY A. CHESSER,

    Plaintiff,

v.

DIRECTOR FEDERAL BUREAU OF PRISONS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This action is before the court on Plaintiff Zachary A. Chesser's ("Plaintiff" or "Mr. Chesser") Motion For Leave To Supplement And File Motion For Temporary Restraining Order and Preliminary Injunction (the "Motion").[1] [#80, filed Feb. 6, 2017]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated January 7, 2016. [#37]. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, following a careful review of the Motion, the associated briefing, the entire case file, and the applicable case law, the Motion is DENIED.

## BACKGROUND

The court has discussed the background of this case in several prior orders, *see, e.g.*, [#53; #86], and will only discuss it here as it relates to the pending motion. Plaintiff is Muslim

---

[1] Because Plaintiff proceeds *pro se*, this court liberally construes his pleadings; however, the court cannot act as an advocate, even for a *pro se* litigant. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir.2008).

and currently incarcerated at the United States Penitentiary Administrative Maximum Facility located in Florence, Colorado ("ADX"). *See* [#1-1; #58 at ¶ 5; *Chesser v. Walton*, 3:12-cv-01198-JPG-PMF (S.D. Ill.) ("*Chesser I*"), ECF No. 236 at 3].[2] Plaintiff originally alleged that the BOP has substantially burdened his exercise of religion in violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb-1 *et seq. see generally* [#1-1; #58], and sought to challenge broadly both his assignment to the ADX and his treatment within the ADX as violations of his religious freedoms. On September 8, 2015, the United States District Court for the District of Columbia ("D.C. District Court") transferred Plaintiff's *pro se* complaint to this court, based on Defendant's motion pursuant to 28 U.S.C. § 1404. [#1].

Following the filing of an Amended Complaint and a Second Amended Complaint ("SAC"), the Honorable Lewis T. Babcock issued an Order dismissing the SAC's Claims I and II, i.e., that restrictions on religious gatherings set out in BOP Program Statement 5360.09 ("BOP Program Statement 5360.09" or "Program Statement") violates both the RFRA and the Establishment Clause, as duplicative of Mr. Chesser's claims in *Chesser I* pending before the United States District Court for the Southern District of Illinois. [#24]. Judge Babcock, however, ordered that Plaintiff's remaining claims (Claims III and IV) be drawn to a presiding judge, and those claims were drawn to the undersigned Magistrate Judge on December 22, 2015. [*Id.*; #25]. On March 25, 2016, the court issued an Order denying Plaintiff's Motion to Reconsider Dismissal of Counts I and II [#32], wherein Plaintiff argued that Claims I and II were distinct from those claims in *Chesser I*. [#53]. The court concluded that, despite Mr. Chesser's characterization to the contrary, such claims notably overlapped with his claims in *Chesser I*, "if

---

[2] [#_] is an example of a convention the court uses when referring to documents in the instant matter, whereas [ECF. No. _] is a convention the court uses to refer to documents in other proceedings.

not outright duplicat[ed] . . . the claims in the two cases." [*Id.* at 9]. However, by that same Order, the court granted Plaintiff leave to file his Third Amended Complaint ("TAC") to clarify the issues in Claims III and IV, which became the operative complaint in this matter on June 9, 2016, nearly one-year after the case's transfer to this district. [#58].

On August 3, 2016, Defendant Director of Federal Bureau of Prisons ("Defendant" or "BOP") filed its second motion to dismiss, aimed at Plaintiff's TAC. [#67]. The court granted Defendant's motion, in part, and denied the motion, in part. *See* [#86]. Accordingly, the remaining claims in this matter are: (1) Claim III to the extent it challenges the BOP's consideration of Mr. Chesser's ties to terrorism as the primary reason for transferring him to ADX without regard to other applicable factors, and (2) Claim IV that the conditions at ADX substantially burden the exercise of Mr. Chesser's sincerely held religious beliefs in violation of the RFRA. [*Id.*]. Neither of these claims encompass a facial challenge to BOP Program Statement 5360.09.

Prior to the court's ruling on the Motion to Dismiss, however, Plaintiff filed the instant Motion on February 6, 2017. [#80]. The Motion is two-fold. First, though titled a supplement, Plaintiff seeks leave to amend his complaint a fourth time, reasserting the twice dismissed Claims I and II. [*Id.* at 1-2]. Plaintiff argues that he seeks to reassert these claims because the Southern District of Illinois dismissed these claims without prejudice;[3] thus, they are no longer duplicative of *Chesser I*. [*Id.*]. Second, Plaintiff seeks injunctive relief under proposed Claims I and II in the form of a temporary restraining order ("TRO") allowing Mr. Chesser to engage in group prayer at the ADX, and a preliminary injunction enjoining the BOP's imposition of

---

[3] The *Chesser I* court specifically found that "Chesser asserts in various filing that [that] case includes a challenge to the nationwide application of the congregate worship policy; he is wrong." *Chesser I*, 2016 WL 6471435, *1 (S.D. Ill. 2016).

3

Program Statement 5360.09 at *all* BOP facilities. [*Id.* at 2, 29]. From the papers, it is clear that the request for a TRO is predicated on the claims to be asserted. Defendant opposes both the TRO and any amendment, and Plaintiff filed a reply. *See* [#85; #92]. Then, on March 23, 2017, the court held a Status Conference at which it set the following relevant deadlines: (1) March 23, 2017 for amendment of pleadings and joinder of parties; (2) September 25, 2017 for discovery; and (3) October 27, 2017 for dispositive motions. [#100].

## LEGAL STANDARDS

Mr. Chesser now seeks to re-assert a facial challenge through this instant Motion to the BOP Program Statement 5360.09's restrictions on religious gatherings as violating (1) the RFRA and (2) the Establishment Clause of the First Amendment of the United States Constitution, because religious groups are treated differently than secular groups. [#80 at 13-28]. Mr. Chesser identifies the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* as an additional basis for jurisdiction for these claims.[4] [#80 at 14]. As relief, Mr. Chesser seeks injunctive relief not only as to himself personally, but also seeks to enjoin the BOP from enforcing Program Statement 5360.09 [#85-2] with respect to all BOP facilities. [#80 at 13-28]. He also seeks attorney's fees and costs. [*Id.* at 27]. He specifically disclaims any request for monetary damages. [*Id.* at 2 n.1].

---

[4] There is some question as to whether an inmate may challenge a BOP Program Statement under the Administrative Procedures Act. BOP Program Statements are considered policies or guidelines, and are not subject to administrative rulemaking. *See Robles v. English*, No. 5:13cv6, 2013 WL 3797594, at *5 (N.D. Fla. July 19, 2013) (citing cases). At least one court has found that such Program Statements are not subject to the APA's notice and comment requirements. *See Watkins v. Hallock*, No. 13-cv-13-DLB, 2013 WL 2102888, *2 (E.D. Ky. May 5, 2013). But because this argument was not raised or briefed by the Parties, and it is not dispositive, this court does not address jurisdiction under the APA substantively at this time.

## I. Rule 15(a) Amendment

Because Mr. Chesser filed the Motion prior to the deadline for amendment of pleadings, Rule 15(a) would ordinarily govern the court's analysis. *See Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (recognizing that if a party files a motion to amend prior to the expiration of the deadline for joinder of parties and amendment of pleadings there is no requirement to also establish good cause to amend the scheduling order under Rule 16(b)). Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (observing that a court may dismiss a motion to amend if amendment is futile, *i.e.*, the amended complaint would be subject to dismissal for any reason).

## II. PLRA Requirements

This standard, however, must also be read within context of the Prison Litigation Reform Act ("PLRA") and the restrictions imposed by 28 U.S.C. § 1915. *See Green v. Denning*, No. 06-cv-3298-SAC, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009). While Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, *see* Fed. R. Civ. P. 18(a); *cf. Green*, 2009 WL 484457 at * 2 (observing that the controlling principle of the Rule is that unrelated claims against different defendants belong in different suits), the PLRA places several restrictions on *pro se* prisoner litigants, including the requirement of a full payment of filing fees through partial payments over time and a "three-strike" provision that prevents a prisoner from proceeding *in forma pauperis* if three or more cases have been dismissed as frivolous, malicious, or as stating

5

no claim for relief. *Smith v. Howell*, No. 14-cv-1374, 2015 WL 4878354, at *10 (W.D. Okla. June 23, 2015). The PLRA also requires the court to conduct a preliminary review of the proposed claims, and must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); D.C.COLO.LCivR 8.1(b).

## ANALYSIS

Before this court can even reach Mr. Chesser's request for a temporary restraining order, it must first determine whether the proposed claims are viable. The court first considers its own subject matter jurisdiction. Only after it has satisfied itself that subject matter jurisdiction exists may this court consider whether amendment, or a temporary restraining order, is appropriate.

**I.    Standing**

Defendant argues amendment should not be permitted because this court lacks subject matter jurisdiction over Plaintiff's proposed claims, and levies a factual challenge to Plaintiff's standing. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Standing is an essential component of subject matter jurisdiction. *See Chrisman v. C.I.R.*, 82 F.3d 371, 373 (10th Cir. 1996). To establish standing to invoke this court's subject matter jurisdiction, a plaintiff is required to demonstrate "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. "[A] federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance." *See Colo. Outfitters Ass'n v. Hickenlooper* ("*Colorado Outfitters II*"), 823 F.3d 537, 543 (10th Cir. 2016). Plaintiff must establish standing to bring each of the two proposed claims separately. *See Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).

To establish the existence of an "injury in fact," "a plaintiff must offer something more than the hypothetical possibility of injury." *Colorado Outfitters II*, 823 F.3d at 544. Instead, the alleged injury must be "concrete, particularized, and actual or imminent." *Id.* (citing *Lujan*, 504 U.S. at 560). When seeking prospective or declaratory relief, a plaintiff must demonstrate a "real and immediate threat" of future injury to satisfy the injury in fact requirement; past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1274 (11th Cir. 2003). The alleged injury must also be "fairly traceable" to the action by Defendant that is challenged. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 180 (2000). The Tenth Circuit has explained that Article III's causation requirement requires proof of a "substantial likelihood that Defendant's conduct caused Plaintiff's injury-in-fact." *Nova Health*

*Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). The redressability requirement centers on whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. The questions of justiciability (other than mootness) are ascertained as of the time the action is brought. *See Friends of the Earth,* 528 U.S. at 180.

In a factual challenge to subject matter jurisdiction, a court may consider evidence outside the pleadings and resolve factual disputes without converting the motion to dismiss to one for summary judgment, so long as the jurisdictional issue is not intertwined with the merits of the case. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In this case, the jurisdictional issue, i.e., whether Mr. Chesser has suffered an injury to satisfy the standing and whether such a claim is ripe for review is not intertwined with whether BOP Program Statement 5360.09 substantively violates RFRA and/or the Establishment Clause of the First Amendment of the United States Constitution. Accordingly, this court finds that the consideration of evidence outside of the record is appropriate.

### A. Injury in Fact

As an initial matter, this court evaluates Mr. Chesser's facial challenge of BOP Program Statement 5360.09 as limited to his challenge of § 7(a), which is entitled Religious Accommodation and addresses congregate services, and § 7(d), which addresses the supervision of inmate religious groups. [#80]. Though his language of challenging the BOP Program Statement 5360.09 is sweeping, the only purported injuries suffered by Plaintiff arise from §§ 7(a) and 7(d). [#80 at 23, ¶ 15, 14-15]. *See Jordan v. Sosa*, 684 F.3d 1012, 1019 (10th Cir. 2011). Indeed, in Reply, Mr. Chesser implicitly concedes that his facial challenge is limited to §§ 7(a) and 7(d). [#92]. Therefore, this court tailors its consideration to only those two sections

of the BOP Program Statement 5360.09. *See Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-29 (2006).

The BOP argues that Mr. Chesser has not suffered an injury-in-fact because these provisions have no effect upon him because the ADX restricts all group activities, religious or secular, and does not allow any congregate services. [#85 citing #85-1, ¶ 6]. That restriction is derived not from the BOP Program Statement 5360.09, but from the Complex Supplement FCC 5360.09E, that bans all congregate services at the ADX [#85-3 at 4], and because "inmates within the ADX are severely restricted in all of their group activities, whether religious or secular." [#85-1 at 3]. In response, Mr. Chesser argues that the BOP overlooks that he received four incident reports; was sent to ADX; and lived under the constant threat of punishment. [#92 at 2]. Plaintiff also argues that the ADX allows up to eight inmates to have recreation together and that he can and does engage in secular gatherings every single day. [*Id.* at 4]. He further argues that other FCC Florence inmates are allowed only one religious gathering per week [*id.* at 3], and another inmate, Mohamed Ooleh, was sent back to ADX-GP for a year over a group prayer because it violates the BOP Program Statement §§ 7(a) and 7(d). [*Id.* at 4]. He contends that he anticipates that he will be transferred from ADX no later than June 17, 2017 because he is in the ADX Step-Down Program and, therefore, his departure from ADX is "imminent." [*Id.* at 7]. Finally, Mr. Chesser clarifies that his challenge to § 7(d) is not directly to the supervision of religious gatherings, *per se*, but to the fact that § 7(d) requires prior BOP approval and, therefore, functions as a cap. [*Id.* at 3].

With respect to his allegations that actions taken against him in the past, such past actions cannot confer standing to bring Plaintiff's claims for prospective injunctive and declaratory relief. *See Jordan*, 654 F.3d at 1019 ("Although a plaintiff may present evidence of a past injury

9

to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief."). And to the extent that Mr. Ooleh, a separate inmate who is not a party to this action, has been harmed due to violations of the BOP Program Statement, Mr. Chesser lacks standing to bring claims on another inmate's behalf. *See Swoboda v. Dubach*, 992 F.3d 286, 290 (10th Cir. 1993). Therefore, this court focuses on whether Mr. Chesser stated an injury-in-fact as to the limitations applied to, or prohibition of, congregate prayer.

This court concludes that Mr. Chesser has stated an ongoing injury-in-fact for the purposes of standing; i.e., Plaintiff alleges that he is being limited or deprived of the ability to gather for religious purposes outside BOP-authorized services. [#80]. The court now turns to whether Mr. Chesser has established a sufficient causal link §§ 7(a) and 7(d) of the BOP Program Statement 5630.09 to his claimed injury

### B.    Fairly Traceable

To show that his alleged injury is fairly traceable to §§ 7(a) and 7(d) of the BOP Program Statement 5630.09, Mr. Chesser has to identify facts that demonstrate that there is a "substantial likelihood" that the BOP's implementation of the Program Statement caused his injury. *Turner v. Nat'l Council of State Boards of Nursing, Inc.*, 561 F. App'x 661, 670 (10th Cir. 2014). Mr. Chesser asserts that the combination of §§ 7(a) and 7(d) results in his deprivation of the ability to gather for religious purposes outside of BOP-authorized services.

Mr. Chesser first alleges that § 7(a) of BOP Program Statement 5630.09 authorizes only one religious gathering per week. [#80 at 15-16]. But § 7(a) plainly states that "[t]he level of scheduled activities is expected to be commensurate with the institution's mission/need" and requires authorized congregate services to be made available on an *at least* weekly basis. [#85-2 at 4]. Thus, § 7(a) acts as a *floor* to the number of congregate services, rather than as a *cap*, as

Mr. Chesser suggests. Therefore, any perceived injury to Mr. Chesser is not fairly traceable to § 7(a) of the BOP Program Statement 5630.09.

As for § 7(d), Mr. Chesser avers that this section requires inmates to seek special authorization for religious gatherings to be permitted, presumably because constant staff supervision is required for all inmate-led religious programs. [#80 at 16-17]. The BOP argues that Plaintiff has failed to state an injury-in-fact as to this section of the Program Statement because he concedes that he is not bothered by supervision [#85 at 9 (citing #80 at 40-41)]. But that argument is misplaced; Mr. Chesser does not contend that his alleged injury is the supervision required by § 7(d), but that he is not allowed to congregate group religious services without authorization. Nevertheless, Mr. Chesser's arguments regarding standing are unavailing, because § 7(d) does not reflect a national policy prohibiting inmate-led religious programs, or even a national policy requiring inmates to secure permission before convening an inmate group meeting. Rather, those restrictions are implemented at ADX through different policies, including the ADX Complex Supplement FCC 5360.09E [#85-3] and BOP Program Statement 5381.05, governing inmate organizations. [#85-4]. Put another way, even if inmate-led religious programs did not require constant supervision as set forth in § 7(d) of the BOP Program Statement 5360.09, Mr. Chesser still would be unable to engage in unauthorized congregate prayer because *any* inmate-led program requires prior authorization. [#85 at 12 (citing [#85-2; #85-3]). His injury is simply not fairly traceable to the BOP Program Statement 5360.09, and, accordingly, he has no standing to bring a facial challenge to this policy.

    **C.**     **Redressability**

As eluded to in the prior discussion, Plaintiff also lacks standing to bring a facial challenge to BOP Program Statement 5360.09 because even if the court was to invalidate §§ 7(a)

and 7(d) of the Program Statement, it would not resolve Mr. Chesser's injury-in-fact. He would still be prohibited from congregating for unauthorized group prayer, even if authorized group prayer no longer required constant supervision, because inmates may only participate in organizations that have been recognized and sanctioned by the Warden of the particular facility and meetings of approved inmate organizations must be pre-approved by the Warden or designee. [#85-4 at 4, 8-9].

Because this court concludes that Plaintiff lacks standing to bring a facial challenge to BOP Program Statement 5360.09, it goes no further in analyzing whether the proposed amendments can satisfy the requirements of the PLRA or whether a temporary restraining order is warranted. *See Cunningham v. BHP Petroleum Great Britain PLC,* 427 F.3d 1238, 1245 (10th Cir. 2005) (holding that once a federal court determines that it is without subject matter jurisdiction, it must not proceed to consider any other issue).

## CONCLUSION

Therefore, for the reasons stated herein, **IT IS ORDERED** that:

(1)  Plaintiff's Motion For Leave To Supplement And File Motion For Temporary Restraining Order and Preliminary Injunction [#80] is **DENIED**; and

(2)  A copy of this Order shall be sent to the following:

>   Zachary A. Chesser #76715-083
>   FLORENCE ADMAX
>   U.S. PENITENTIARY
>   Inmate Mail/Parcels
>   PO BOX 8500
>   FLORENCE, CO 81226

DATED: June 1, 2017　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　s/ Nina Y. Wang
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge