1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF COLORADO

3    Case No. 15-CV-01939-NYW

4    _____

     ZACHARY A. CHESSER,

5         Plaintiff,

6    vs.

7    DIRECTOR OF FEDERAL BUREAU OF PRISONS,

8         Defendant.

9    _____

10          Proceedings before NINA Y. WANG, United

11   States Magistrate Judge, United States District Court

12   for the District of Colorado, commencing at 2:19 p.m.,

13   June 14, 2017, in the United States Courthouse, Denver,

14   Colorado.

     _____

15

          WHEREUPON, THE ELECTRONICALLY RECORDED

16   PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17   _____

18                      APPEARANCES

19          ZACHARY A. CHESSER, Pro Se.

20          SUSAN PROSE, Attorney at Law, appearing for

21   the defendant.

     _____

22

23

24

25   TRANSCRIPT OF AUDIO RECORDED DISCOVERY CONFERENCE

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 2

```
 1                    P R O C E E D I N G S

 2              (Whereupon, the within electronically

 3  recorded proceedings are herein transcribed, pursuant

 4  to order of counsel.)

 5              THE COURTROOM DEPUTY:  All rise.  Court is

 6  now in session.

 7              THE COURT:  Thank you.  Please be seated.

 8              We are on the record in 15-cv-1939-NYW,

 9  Chesser versus Director of Federal Prisons.

10              Mr. Chesser, do I have you on the phone?

11              MR. CHESSER:  Yes, Your Honor.

12              THE COURT:  Good afternoon.

13              MR. CHESSER:  Good afternoon.

14              THE COURT:  And could I have appearance of

15  counsel, please.

16              MS. PROSE:  Good afternoon, Your Honor, and

17  to Mr. Chesser as well.  Susan Prose for the Bureau of

18  Prisons.

19              THE COURT:  All right.  Good afternoon.

20              We are here for an informal discovery

21  dispute conference with respect to numerous issues.

22  I have been through the discovery dispute chart, but I

23  thought I -- excuse me -- would take this opportunity

24  to actually do an oral ruling on a number of discovery

25  motions that are currently pending, and then hopefully
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 3

 1  we can use that framework moving forward with respect

 2  to the discovery disputes in part because I think that

 3  there may be some confusion about what the claims are

 4  and how they are stated in this case, but in part also

 5  because there are a number of pending motions.  And I

 6  have not had an opportunity to spend a significant

 7  amount of time with your discovery dispute chart

 8  because I just received it yesterday and have had a

 9  fairly full docket in the last couple of days.

10          MS. PROSE:  Understood.

11          THE COURT:  So what I'm going to do is I'm

12  going to start with the order.  It is going to be an

13  order -- an oral order.  I may or may not follow that

14  up with a written order so that Mr. Chesser has a copy

15  of that.

16          Mr. Chesser, if you don't have a copy -- if

17  I don't issue an oral order, I will make sure that you

18  also have a transcript of what I'm going to recite,

19  because I don't expect that you are going to be able to

20  take voluminous notes word for word.  All right?

21          MR. CHESSER:  Okay.

22          THE COURT:  All right.  Pending before this

23  court are a number of discovery motions that have been

24  filed over the course of discovery by the plaintiff,

25  Zachary H. Chesser, with whom I refer to as plaintiff

Zachary A. Chesser vs.                    Transcript of Audio Recorded Discovery Conference
Director of Federal Bureau of Prisons                                    June 14, 2017

Page 4

 1    or Mr. Chesser.

 2           The first one is plaintiff's motion to issue

 3    a subpoena on the Department of Defense for documents

 4    on Guantanamo Bay.  That is Docket Entry 106 filed on

 5    April 13th, 2017.  The second is a motion for

 6    protective order compelling fair deposition and

 7    inspection terms.  That is Document Number 114 filed on

 8    May 1st, 2017.  Third is a motion to issue subpoena on

 9    the Colorado Department of Corrections, that Docket

10    Number 115 filed on May 1st, 2017.  The fourth is a

11    motion for me to depose the inmate Mostafa Kemal

12    Mostafa, Docket Number 117, filed May 1st, 2017.

13           I also note that there is a pending motion,

14    a motion to compel a complete answer to a third amended

15    complaint or deem allegations admitted.  That's Docket

16    Entry 132 filed on May 31st, 2017.  To my knowledge,

17    the Government has not yet filed a response to that

18    motion to compel and answer to the third amended

19    complaint or deem allegations admitted, so hopefully

20    this conference will shed some light on those issues,

21    but I will not rule on that last pending motion until I

22    receive the response by the Government.

23           These motions are before the court pursuant

24    to 28 U.S.C. 636(c), which is the statute that

25    authorizes this court to proceed as a presider upon

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 5

1    consent of the parties.  The parties' consent, which

2    was found at Docket Entries 31 and 33, and the order of

3    reference, which is Docket Number 37.

4              The court concludes that prior to engaging

5    in the informal discovery dispute conference scheduled

6    for today, it would be appropriate to rule on these

7    pending motions in order to provide the parties a

8    framework for the discovery moving forward.

9              First and foremost, before turning to the

10   individual motions, this court notes for the record the

11   only two remaining claims asserted by Mr. Chesser in

12   this action.  There is Claim 3, to the extent that it

13   is challenging the BOP's consideration of Mr. Chesser's

14   ties to terrorism as the primary reason for

15   transferring to ADX without regard to other applicable

16   factors.

17             And then we have Claim 4, which is an

18   allegation that the conditions at ADX substantially

19   burden the exercise of Mr. Chesser's clearly held

20   beliefs, both in violation of RFRA, the Religious

21   Freedom Restoration Act.

22             There are no claims in this action

23   challenging the constitutionality of the BOP Program

24   Statement 5630.09 or any other national BOP policy;

25   rather, each of these claims deals with how a

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 6

 1   particular action taken by the BOP affects Mr. Chesser

 2   as an individual as applied.

 3          Discovery in this matter will be limited to

 4   information relevant to each of these claims.  As it's

 5   well settled, the discovery is not intended to be used

 6   to gather information for any other purpose than

 7   litigation before this court, whether that litigation

 8   is pursuing the claims or defenses or whether it is

 9   resolving the issues, but solely before this court.

10          Discovery is not intended to be used to

11   gather information for any other action, any potential

12   claims that have been asserted or not asserted, which

13   the plaintiff may intend to assert, and to which I

14   refer to the plaintiff's notice of filing a third

15   amended complaint.  Therefore, before turning to the

16   legal requests, this court sets out some applicable

17   legal standards.

18          First, Rule 28 -- Rule 26(b)(1) of the

19   Federal Rules of Civil Procedure governs the scope of

20   discovery in a matter.  The Federal Rules of Civil

21   Procedure allow for discovery of any non-privileged

22   matter that is relevant to any claim or defense and

23   proportional to the needs of the case.  In

24   determination of whether or not information is

25   discoverable must be assessed by the parties and the

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 7

```
 1   court on a case-by-case basis, and that's Rule
 2   26(b)(1).
 3             In determining whether particular discovery
 4   is relevant, the court considers whether the
 5   information sought would make it more or less likely
 6   that a particular operative fact, whether that
 7   operative fact pertains to a claim or defense, would be
 8   more or less likely true.
 9             Once the court determines whether discovery
10   is relevant, it also considers whether or not the
11   discovery sought is proportional to the needs of the
12   case.  Specifically, Rule 26(b)(1) provides that,
13   quote, Unless otherwise limited by court order, the
14   scope of discovery is as follows:  Parties may obtain
15   discovery regarding any non-privileged matter that is
16   relevant to any party's claim or defense and
17   proportional to the needs of the case considering the
18   importance of the issue at stake in the action, the
19   amount in controversy, the party's relative access to
20   relevant information, the party's resources, the
21   importance of discovery in resolving the issues, and
22   whether the burden or expense of the proposed discovery
23   outweighs its likely benefit.  Information within the
24   scope of discovery need not be admissible in evidence
25   to be discoverable.
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 8

```
 1              Now, in this case, the plaintiff brings his
 2   claims under the Religious Freedom Restoration Act,
 3   28 U.S.C. Section 2000bb-1 and following.  That section
 4   provides -- or that law provides that the government
 5   shall not substantially burden a person's exercise of
 6   religion, thus, a plaintiff establishes a prima facie
 7   case under RFRA by proving the following three
 8   elements: a substantial burden that was imposed by the
 9   federal government; on, two, a sincerely held; three,
10   exercise of religion, and that's Kikumura versus
11   Hurley, 242 F.3d 950 at 960, 10th Circuit 2001.
12              The court previously found that Mr. Chesser
13   had sufficiently alleged a substantial burden on a
14   sincere exercise of religion if he alleges that the
15   policy requires a participation in the activity
16   prohibited by his sincerely held belief or, more
17   importantly in this case, it obstructs participation in
18   conduct motivated by that belief or places substantial
19   pressure on adherent to act contrary to his beliefs.
20              Once a prima facie case is established, the
21   burden then shifts to the government to show that there
22   is a compelling interest that is satisfied through the
23   application of the challenged law to the person, the
24   particular claim that his sincere exercise of religion
25   is being substantially burdened.
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 9

1           In addition, the defendant must establish

2   that the substantial burden is the, quote, least

3   restrictive means of furthering that interest, and

4   that's Yellowbear versus Lampert, 741 48 F. 56.

5   That's a 10th Circuit case in 2014.

6           So for the purposes of the motion to

7   dismiss, the court found that the plaintiff, in this

8   case Mr. Chesser, had established a prima facie case

9   and then deferred any arguments with respect to the

10  Government's burden for some time other than the motion

11  to dismiss phase, finding that all the plaintiff had to

12  do at the motion to dismiss phase was to plead that

13  there was a substantial burden on his sincerely held

14  religious beliefs and exercise of his religion, not

15  that he had to plead that the Government lacked or

16  established facts to show that the substantial burden

17  was the least restrictive.  So that's where we stand

18  today.

19          Now, let's turn to the specific motions that

20  are in front of the court today.  The first one is a

21  motion to issue a subpoena on the Department of Defense

22  for documents on Guantanamo Bay, and that's Docket

23  Entry 106, again, filed on April 13th, 2017.

24          Mr. Chesser requests a court order

25  subpoenaing records in the possession of the Department

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 10

1  of Defense regarding, quote, Detention of terrorists at

2  Guantanamo Bay Detention Center otherwise known as

3  Gitmo.  Based on these reports, the plaintiff believes

4  that most Guantanamo Bay detainees are held in open

5  population.  And even if they are not, they are not --

6  they are at least allowed to interact with other Muslim

7  inmates.

8          Mr. Chesser argues that this potential fact

9  aligns with his notion that less restrictive

10  alternatives to prohibiting congregate prayer at ADX

11  and other BOP facilities is to have terrorist-specific

12  prisons and/or Muslim terrorist-specific housing units.

13          Now, let me stop there and make something

14  clear.  To the extent that Mr. Chesser is trying to

15  assert any claims that extend to any other BOP

16  facilities, that is not my understanding or

17  interpretation of the claims in front of me.

18          There is no challenge right now in this case

19  to any national BOP policy or any policies as applying

20  to any other facility other than the ADX.  The two

21  remaining claims are personal to Mr. Chesser and to his

22  individual treatment and whether or not his individual

23  treatment violates RFRA.

24          Further, Mr. Chesser argues that evidence of

25  Guantanamo Bay's treatment of its inmates would provide

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 11

1   evidence of exemptions, presumably religiously

2   motivated that are allowable under RFRA.  And then

3   Mr. Chesser continues the documents will ensure that a

4   later subpoena for a deposition will not be a waste of

5   time and money.

6          Mr. Chesser requests all information whether

7   detainees are held in open population or solitary, the

8   rationale for doing so and the reason for placement in

9   various units.  He requests any electronic or tangible

10  document in the DOD's possession, custody, and control

11  that is not confidential.

12         And as for instructions,  Mr. Chesser

13  writes, Objecting on the grounds that something is

14  publicly available is not a legitimate objection

15  because Mr. Chesser is incarcerated.  The only

16  information regarding the detention of inmates at

17  Guantanamo Bay and basic security concerns posed by

18  inmates to determine if the methods of confinement at

19  Guantanamo Bay offer viable solutions to the practice

20  of solitary confinement for terrorists held in the BOP,

21  you may liberally redact information not relevant to

22  this request, and the DOD may simply provide a summary

23  of why certain inmates are placed in certain units

24  within Guantanamo Bay.  And the DOD may redact all

25  information regarding the layout of Guantanamo Bay.

1            So Mr. Chesser argues that he has done his

2   best to avoid any harms to national security because he

3   only wants general information on open population units

4   rather than solitary confinement units and what types

5   of inmates are generally housed in each kind, if only

6   inmates held in solitary and 11 defendants as the Ahmad

7   (inaudible), Docket Number 80, would support.  It would

8   be difficult to establish that Mr. Chesser is more

9   dangerous, for example.

10           So first of all, one thing that I need to

11   address is that, Mr. Chesser, you have a definition of

12   solitary confinement, as I understand it, which

13   essentially means that you're in solitary confinement

14   if more than half a day is spent secluded from general

15   population.

16           And based on that definition, as I

17   understand it, which was part of a footnote in the

18   order with respect to the motion to dismiss, you

19   characterize yourself as being held in solitary

20   confinement.

21           So the first issue that the court has to

22   address is this issue of semantics and solitary

23   confinement because, as I understand it, the ADX has

24   obviously very restrictive means of holding certain

25   inmates, but that that definition of solitary

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 13

 1   confinement has not at least been established to me

 2   on the record as being a consistent correctional

 3   definition of solitary confinement.

 4          So when I am using the term "solitary

 5   confinement" in this case and with respect to these

 6   orders, I am taking what you have defined as "solitary

 7   confinement," but I do think that this is incumbent on

 8   this court to acknowledge the fact that I am not

 9   certain that that is an appropriate definition of

10   solitary confinement, and you will see that woven

11   through my determinations here with respect to whether

12   or not something may or may not be relevant.

13          Mr. Chesser asserts that the subpoena allows

14   the DOD to redact information on a, quote, whim, so

15   long as they provide a summary of the information

16   relevant to the case.  The BOP objects on relevance and

17   proportionality grounds under Rule 26(b)(2)(c)(iii) and

18   Rule 26(b)(1).  The BOP argues that the court is

19   limited in the scope of Mr. Chesser's remaining claims,

20   and accordingly, such claims have no -- well, the

21   conditions at Guantanamo Bay or the DOD's rationale for

22   detaining inmates at specific units at Guantanamo Bay

23   have no bearing on the remaining claims.

24          Further, the BOP contends that the requested

25   information is not evidence of exemptions that are

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 14

1    allowable under RFRA.  And the BOP distinguishes

2    Mr. Chesser's reliance on Holt versus Hobbs, 135

3    Supreme Court 853/856, 2015, because the Supreme Court

4    in Holt considered only other prisons within the United

5    States when holding Mr. Holt's prison could make an

6    exemption to their no beer policy.  The court did not

7    consider prisons outside the United States.

8            Moreover, the BOP argues that Guantanamo Bay

9    is a vastly distinct and (inaudible) from the BOP

10   facilities.  It's located on the military base, and

11   it's designed to house a very specific group of enemy

12   combatant detainees, and management strategies at

13   Guantanamo Bay are likely inapplicable to the needs of

14   ADX.

15           The BOP continues that the subpoena will

16   produce no relevant evidence and the information sought

17   will not refute BOP's burden that the restrictions are

18   the least restrictive means for furthering a compelling

19   interest at ADX.

20           Finally, the BOP contends that even if the

21   court were to issue the subpoena, Mr. Chesser would

22   still need to comply with the Department of Defense's

23   Touhy regulations promulgated in the light of the

24   United States ex rel Touhy versus Ragen, 340 U.S. 462,

25   1951, where the court held that an FBI agent was

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 15

1 justified in refusing to produce all documents without

2 limitations requested by a prisoner in this habeas

3 proceeding.

4          The agent refused to produce information

5 based on an internal memo from the attorney general,

6 and the court upheld the attorney general's policy and

7 the refusal; thus, Mr. Chesser would have to make the

8 requisite Touhy request, which is -- the regulations

9 are at 36 CFR 1012.5.  And assuming that the DOD does

10 not appear and object, only after approval of the DOD

11 would Mr. Chesser receive the information requested.

12          I'm not going to go through Mr. Chesser's

13 reply except to state that it is obvious to this court

14 that both the BOP and Mr. Chesser have a differing

15 opinion as to the relevance and proportionality.

16          I will first address my own authority

17 because the BOP is not the entity to whom the subpoena

18 is directed.  Accordingly, to Mr. Chesser, the BOP

19 lacks standing to assert any sort of objection to a

20 subpoena that is not directed to it.  And from a

21 traditional sense, this court would agree with

22 Mr. Chesser that a subpoena directed at a third party

23 or a nonparty to the action, the party to the action

24 may not have any standing to object to that subpoena.

25          However, it is clear that despite

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 16

1  Mr. Chesser's argument that the court cannot deny a

2  request under the language of Rule 45(a)(3), the

3  court may use its inherent powers, as recognized by

4  Mr. Chesser, which may or may not -- which Mr. Chesser

5  says may or may not be delegated under 636(b) as

6  requiring scrutiny of pro se prisoner subpoenas to

7  prevent abuse so that Mr. Chesser needs to explain the

8  reason he seeks this information.

9            As to the jurisdiction of issuing a subpoena

10 in Colorado, Mr. Chesser writes that the Department of

11 Defense obviously has facilities, employs people, and

12 transacts business within 100 miles of Florence.  There

13 is a nearby Air Force base, and the DOD arguably could

14 not assert distance as a concern anywhere in the United

15 States.

16           Contrary to these arguments, the court has

17 authority under Rule -- the Federal Rules of Civil

18 Procedure to consider whether or not a subpoena arising

19 from a case over which it presides falls within the

20 appropriate scope of discovery.

21           While Mr. Chesser correctly notes that Rule

22 45 does not in and of itself contain language regarding

23 relevance, it's equally clear that 26(b)(1) applies

24 equally to subpoenas to third parties as it does to

25 discovery between the parties.  Subpoenas must still

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 17

1    comply with the relevancy and proportionality

2    requirements of Rule 26, and that's Transcor versus

3    Furney Charters, 212 F.3d -- I'm sorry, F.R.D. 588, 591

4    District of Kansas, 2003, otherwise a litigant could

5    simply use a civil action to seek wholly unrelated

6    materials from third parties.

7          In addition, Rule 26(c) provides this court

8    upon motion or upon its own action may enter a

9    protective order as appropriate to prevent harassing or

10   overburdening discovery.  And as this District of

11   Colorado has recognized and Mr. Chesser recognized,

12   the court has implicit authority, and indeed a

13   responsibility in considering relevance before

14   directing the United States Marshals to serve a

15   subpoena on a third party.  It's Windsor versus

16   Martindale, 175 F.R.D. 665 at 66- -- I'm sorry, 672.

17   That's the District of Colorado 1997 where the court

18   found, Further, requests by a prisoner proceeding in

19   forma pauperis in a civil rights litigation for

20   services of subpoenas duces tecum by the United States

21   Marshal requires a determination by the court as to the

22   relevance of the requested materials and the ability of

23   a prisoner to pay witness fees and mileage, if

24   appropriate, under the circumstances.

25          Absent such a showing, the United States

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 18

1   Marshal service would not be directed to serve such

2   documents, and also noted that any subpoena duces tecum

3   can only require a production of documents for

4   inspection.  The prisoner proceeding in in forma

5   pauperis civil litigation is not entitled to a copy of

6   any document produced under the subpoena without

7   prepayment of the appropriate copy costs, if required.

8           In considering the record before it, this

9   court concludes a proportionality of factors against a

10  subpoena directed at the Department of Defense

11  detention policy on Guantanamo Bay detainees.

12          As an initial matter, the Guantanamo Bay is

13  not a Bureau of Prison facility or traditional

14  correctional facility in any sense; therefore, the

15  court is not persuaded that ADX and Guantanamo Bay are

16  commensurate or similar enough to establish the

17  necessity for producing documents with respect to

18  detention of detainees at Guantanamo Bay.  Therefore,

19  this first motion for subpoena will be denied.

20          Now, Mr. Chesser, to the extent that you can

21  somehow establish that Guantanamo Bay is a comparator

22  to the BOP facilities, you could try to reassert this

23  subpoena, but I have to tell you that based on the

24  record before me and based on the information that I

25  have with respect to your limited claims that are left,

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 19

 1   I am not certain that Guantanamo Bay is an appropriate

 2   comparator.

 3           The second motion is a motion for protective

 4   order compelling share deposition and inspection terms.

 5   Here, Mr. Chesser moves for a protective order under

 6   Rule 26(c) requiring certain terms and actions related

 7   to enabling depositions and inspections, as well as

 8   ensuring there is no undue burden or costs.

 9           Mr. Chesser asserts that he faces two

10   burdens in conducting discovery, costs and

11   incarceration, and I understand that there are those

12   limitations.

13           Mr. Chesser makes certain claims with

14   respect to his request for a provision of the camera

15   and DVD, use of video and depositions, burning DVDs,

16   requiring all depositions be held at ADX, requiring the

17   court to require -- requesting a court order requiring

18   BOP to produce any officer returning to administer an

19   oath under Rule 30(b)(5), allowing an inmate to do so

20   or paying for an officer themselves requiring a similar

21   order concerning recording under Rules 30(c)(1) and

22   (f)(3) and requiring an order allowing inspections of

23   ADX under Rule 34 unless the BOP objects.

24           Now, some of these issues have been -- have

25   been held or considered by this court with respect to

```
 1   the motion for protective order and the plaintiff's
 2   objections to that motion for protective order that has
 3   been entered over the plaintiff's objections.
 4            So for that -- for those purposes alone, to
 5   the extent that this is a motion for reconsideration
 6   under the federal rules of the court's entry of
 7   protective order, the court denies that motion for
 8   reconsideration.
 9            So for instance, we're not going to go over
10   how things are going to be produced in this litigation.
11   The case law is clear that describe the fact that the
12   plaintiff is proceeding IFP.  There are no provisions
13   in the IFP statute or the Federal Rules of Civil
14   Procedure that permit this court to enter some sort of
15   order changing the conduct of discovery except on a
16   very specific basis and upon a showing of good cause.
17            So for instance, I am not going to order
18   all the depositions occur in ADX.  I'm not going to
19   order that there is an inspection of the facility under
20   Rule 34.  I am not going to order that you be able to
21   conduct discovery with a camera and DVD or the -- now,
22   to the extent that you want to use videos during a
23   deposition, the federal rules allow you to videotape a
24   deposition if it is appropriate, but in an absence or
25   in a vacuum, I'm not going to determine the specific
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 21

 1   discovery issues.

 2            So if there was a particular deposition that

 3   you could pay for, demonstrate to the court that you

 4   can pay for it, and to take it and that it's

 5   appropriate to take, you may be allowed under Rule

 6   30(b)(3)(a) to actually videotape that deposition.

 7            I'm not going to order the BOP provide you

 8   three copies of all video footage that you tape because

 9   we're not going to permit video footage just as a

10   matter of general principle.  And to the extent that

11   there is some sort of undue burden -- that's what BOP

12   argues -- I'm not going to have BOP move its witnesses

13   to ADX so that you can pursue depositions in person.

14            To the extent that you want to take

15   depositions and those individuals are not at the ADX

16   facility and it is an appropriate deposition to be

17   taking, the BOP has indicated and represented to the

18   court that they will make any witness available via

19   videoconference or telephone, if appropriate, and I

20   think that is appropriate as well.

21            So we are going to take any of the issues

22   with respect to specific discovery that you all cannot

23   agree on on a case-by-case basis, but this case is

24   going to proceed as any other inmate IFP case would,

25   and there are not going to be special conditions with

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 22

1    respect to how discovery is going to get conducted.

2              In Ajaj versus Federal Bureau of Prisons,

3    that's Number 08CV2006-MSK-MJW, that's found at 2011

4    Westlaw 279 1274 at Star 2 from the District of

5    Colorado on July 15th, 2011, the court there granted

6    the pro se incarcerated plaintiff motion to be allowed

7    to take telephonic or videoconference depositions as

8    follows:  The pro se incarcerated plaintiff will comply

9    with all Federal Rules of Civil Procedure, the local

10   rules for the District of Colorado, and the rules and

11   regulations of the Federal Bureau of Prisons in

12   noticing, setting, and taking any depositions; and that

13   the pro se incarcerated plaintiff would appear by

14   telephone or videoconference provided that the pro so

15   incarcerated plaintiff provides an officer, as defined

16   by Rule 26(a)(1)(A)(b), and, at his own expense, at the

17   location the witness is and arrange for a recording at

18   that location at his own expense consistent with Rule

19   28, 30, and 32, and consistent with the local rules and

20   the rules and regulations of a Federal Bureau of

21   Prisons.

22             So, Ms. Prose, to the extent that the

23   Government has not provided Mr. Chesser with the policy

24   and the rules and regulations of the Federal Bureau of

25   Prisons in conducting depositions, I would ask you to

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 23

1  provide those to him.  As I understand it from the case

2  law, there is some set of regulations and policies that

3  the BOP has for pro se incarcerated plaintiffs to take

4  these depositions.

5          So to this motion, the motion for protective

6  order compelling fair and inspection terms is granted

7  in part to the extent that whatever discovery you're

8  trying to take, Mr. Chesser, is consistent with the

9  federal rules, the local rules, and the rules and

10  regulations of the Federal Bureau of Prisons, we will

11  proceed that way.  And to the extent that you are

12  permitted to take video or telephonic depositions,

13  that's fine as well.  All other relief, it will be

14  denying.

15          The third motion is a motion to issue

16  subpoena on the Colorado Department of Corrections.

17  That's Docket Number 115 filed on May 1st, 2017.

18  Similar to the first motion directed at the Department

19  of Defense, Mr. Chesser seeks a subpoena -- to subpoena

20  the Colorado Department of Corrections, CDOC, to obtain

21  documents concerning their solitary confinement policy

22  reforms.

23          Mr. Chesser argues that as to Claim 4, the

24  documents from the CDOC could show that the BOP's

25  policies, at least with inmates like Mr. Chesser who do

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 24

```
 1   not have a track record of extreme prison violence,

 2   likely has compelling governmental interests, and two,

 3   there are less restrictive alternatives.

 4          The subpoena seems to seek all documents

 5   related to reforms of CDOC's solitary confinement

 6   practices, all documents showing a rate of violence in

 7   the CDOC over a relevant period, and all documents

 8   which show the nature of conduct resulting in long-term

 9   solitary confinement over a relative period of time.

10          Mr. Chesser has also included a note

11   explaining that DOC may want to include a declaration

12   to render the data admissible so as to avoid

13   depositions later on.

14          The policies at other well-run institutions

15   could be relevant to the determination of the need for

16   a particular type of restriction.  Mr. Chesser

17   continues that the documents could provide that ADX can

18   make exceptions to its policies for religious

19   congregation if the documents may contain information

20   regarding the psychological terms of harms of solitary

21   confinement.

22          Mr. Chesser concedes that the information is

23   irrelevant to the substance of RFRA, but is relevant

24   to the balance of harms.  This court construes

25   Mr. Chesser's arguments liberally regarding the balance
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 25

1   of harms as arguments that the discovery he seeks from

2   CDOC is proportional to the needs of this case and that

3   other policies of other well-run institutions would be

4   relevant to the determination of whether or not BOP is

5   using the least restrictive means required at the ADX.

6            With respect to the importance of the issues

7   presented in this case, Mr. Chesser argues that this

8   case could easily be the most important case before a

9   court today on four broad subjects: prisoner rights,

10  national security, religious freedom, and free speech.

11           As an initial matter, the court notes that

12  there is not a free speech component to the claims as

13  they are pled.  The court also recognizes that the

14  constitutional issues of prisoner rights and, in

15  particular, solitary confinement and religious freedom

16  are significant and are important issues that face the

17  court and society today.

18           However, the court cannot look at these

19  issues in an academic or overly broad sense, but must

20  always view them through the lens of claims as pled

21  through this action.

22           Mr. Chesser's remaining two claims do not

23  make challenges to national security or free speech,

24  either facially or as applied.  Rather, the issues

25  presented by this case are whether or not the BOP

 1   violated Mr. Chesser's rights by considering his

 2   terrorist ties primarily and add exclusion to others

 3   during his placement at ADX and whether or not the

 4   conditions of his incarceration at ADX violates RFRA.

 5             In doing so the court must be focused upon

 6   whether or not the BOP employs the least restrictive

 7   means to further the compelling interests at ADX and,

 8   if so, the substantial burden on his religious beliefs

 9   failed as a matter of law under RFRA.

10             This court agrees that Mr. Chesser may

11   pursue information from the Colorado Department of

12   Corrections through an appropriately tailored subpoena,

13   but it does not appear that the current subpoena is

14   appropriately tailored.

15             This case does not present a general

16   challenge to solitary confinement, and that is partly

17   why I discuss the definition of solitary confinement;

18   but rather, a challenge to using Mr. Chesser's

19   terrorism ties as a basis for assignment to ADX and a

20   challenge to his conditions of confinement at ADX that

21   prohibits congregate prayer at ADX.

22             Therefore, before the court will issue a

23   subpoena to CDOC, Mr. Chesser must further tailor his

24   subpoena to issues that are relevant to his remaining

25   claims.  So for instance, all documents showing the

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 27

1    rate of violence over CDOC over a relevant period of

2    time is simply too broad.  It is not tailored to either

3    claim as this court can construe.

4            Now, all documents related to reforms of

5    CDOC solitary practices also does not seem reasonably

6    tailored.  To the extent that Mr. Chesser wants to seek

7    information about CDOC's tailoring of solitary

8    confinement and practices in order to accommodate

9    religious freedom, that might be more appropriate.

10           And then all documents that show the nature

11   of conduct resulting in long-term solitary confinement

12   over a relevant period of time, to the extent that you

13   are seeking policies that show what kinds of conduct

14   result in long-term solitary confinement in CDOC, that

15   may be permissible.  But all documents which show the

16   nature of conduct resulting in long-term solitary

17   confinement is simply too broad as written.

18           This case does not present a general

19   challenge to solitary confinement, and once Mr. Chesser

20   tailors his subpoena, this court will be happy to

21   reconsider issuing that subpoena.

22           But in addition, despite the fact that

23   Mr. Chesser is incarcerated and proceeding in forma

24   pauperis, he must bear the costs of the subpoena.

25   That's Hawkinson versus Montoya, Civil Action Number

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 28

1   04-CV-1271-EWN, 2006 Westlaw 121 5397 F Star 2, quote,

2   I will not order the clerk of the court to issue a

3   subpoena commanding the production of documents from a

4   third party until the plaintiff provides proof that he

5   has made arrangements for payment of any costs

6   associated with the preparation or copying of those

7   documents or obtained in agreement with the third party

8   to waive the payment of those costs, and that case also

9   relied upon Windsor versus Martindale.

10          To the extent that Mr. Chesser argues that

11  BOP lacks standing to challenge the subpoena directed

12  at CDOC, the court would agree.  So to the extent that

13  Mr. Chesser can reasonably tailor the subpoena to the

14  CDOC, the court will issue that subpoena and then will

15  await any issue or objection from the CDOC with respect

16  to disclosing its own documents, but I see no basis

17  upon which -- that I can rely upon the BOP's assertions

18  of proportionality with respect to CDOC documents.

19          So for the purposes of ruling on this

20  motion, the motion is denied with leave to refile upon

21  a tailored subpoena that is limited to the issues

22  relevant to this matter and that establishes that

23  Mr. Chesser has made the appropriate arrangements to

24  pay for any costs associated with the preparation or

25  copying of any CDOC documents.  And so that is Docket

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 29

1    Number 115 that's denied without prejudice.

2            The final motion that I will dispose of

3    today is the motion for leave to depose Inmate Mostafa

4    Kemal Mostafa, Docket Number 117, filed on May 1st,

5    2017.  Mr. Chesser requires leave to depose the inmate

6    Mostafa Kemal Mostafa pursuant to Rule 38(2)(b).

7    Mr. Chesser explains that Mr. Mostafa is potentially a

8    critical witness given that he is incarcerated in the

9    United Kingdom or has experienced open population

10   conditions and was placed under solitary confinement

11   only upon his extradition to the United States.

12   Mr. Chesser argues that if a different prison system

13   can offer something, so can, too, the BOP.

14            In addition, Mr. Mostafa is an Islamic

15   scholar and can give expert testimony on the subject of

16   Islam.  Mr. Chesser asserts that it would be frivolous

17   for the BOP to dispute his sincerely held beliefs that

18   Mr. Mostafa would, quote, cut off or shut off that line

19   of defense.

20            The BOP responds that the FBI has determined

21   that Mr. Chesser and Mr. Mostafa are not to communicate

22   as their communication could jeopardize national

23   security.  Moreover, Mr. Mostafa is under stands

24   (phonetic) which prohibits Mr. Mostafa from

25   communicating with  Mr. Chesser.

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 30

1          The BOP attaches a declaration from an FBI

2     agent regarding the FBI's opinion regarding Mr. Chesser

3     and Mr. Mostafa's potential proposed communications.

4     Because of this, the BOP argues that there is no

5     justification for overriding the BOP's national

6     security assessment.

7          Next, they argue that Mr. Mostafa's

8     testimony is not proportional or relevant to

9     Mr. Chesser's claims.  Mr. Mostafa is confined.

10    Mr. Mostafa's confinement in the United Kingdom does

11    not qualify him as an expert, nor does it support

12    Mr. Chesser's underinclusivity argument.  Moreover,

13    placement within ADX requires an in-depth assessment of

14    each inmate's -- in the BOP system and the inmate's

15    confinement in the United Kingdom does not prove that

16    least -- less restrictive means exist.

17          Lastly, Mr. Chesser has no individual

18    communication restrictions, and thus, can find his own

19    experts.

20          Given the fact that there are significant

21    concerns with respect to Mr. Chesser and Mostafa's --

22    Mr. Mostafa's ability to communicate and (inaudible) to

23    communicate, I find that a protective order is

24    appropriate under Rule 26(c).

25          Rule 26(c) provides that the court may, for

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 31

 1   good cause, issue an order to protect a party or

 2   persons from annoyance, embarrassment, oppression,

 3   undue burden, or expense, and includes one or more of

 4   the following: forbidding the disclosure or discovery,

 5   specifying the terms, prescribing the discovery method,

 6   other than one selected by the party seeking discovery,

 7   forbidding inquiry into certain matters or limiting the

 8   scope of disclosure of experts in certain matters,

 9   designating persons who may be present when the

10   discovery is conducted, and requiring that a deposition

11   be sealed and opened only to court order.

12           This court finds that it is appropriate to

13   also restrict or preclude the testimony of Mr. Mostafa

14   in this matter because it is not clear to this court,

15   based on the record before it, that conditions of

16   confinement in the United Kingdom, which it has an

17   entirely different legal system and an entirely

18   different correctional system with different

19   restrictive considerations, is an adequate comparator

20   in this case to ADX.

21           So the court is at this point going to also

22   deny the plaintiff's request to depose the inmate

23   Mostafa Kemal Mostafa.  That's Docket Number 117.

24           As I indicated in the initial colloquy, I

25   have not ruled on the motion to compel complete answer

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 32

1    to the third amended complaint or deem allegations as

2    admitted, Docket Number 32.  Those are not -- that

3    motion is not fully ripe at this time.

4              MS. PROSE:  Excuse me, Your Honor?

5              THE COURT:  Yes.

6              MS. PROSE:  May I speak to that issue

7    briefly?

8              THE COURT:  Yes.

9              MS. PROSE:  Thank you.  Your Honor, after

10   discussion with the BOP and in the interest of

11   eliminating one motion for Your Honor to consider, the

12   BOP would like to propose that we go ahead and file an

13   answer, file an amended answer.  We will answer all

14   allegations in the complaint.

15             To be clear, we have a different view of

16   this matter from Mr. Chesser.  We will be making the

17   answer and footnoting in that answer that we are not

18   conceding that all of the allegations are relevant to

19   the remaining claims.  But even so, it seems to us best

20   at this point simply to go ahead and file an amended

21   answer, if that is acceptable to the court.

22             THE COURT:  All right.  So how long do you

23   have to do that?  I mean, how long do you need to do

24   that?

25             MS. PROSE:  Monday, please.

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 33

1          THE COURT:  Okay.  So Mr. Chesser, it sounds

2     like the Government and the Bureau of Prisons is going

3     to file an amended answer on Monday, June 19th, 2017.

4          MR. CHESSER:  Okay.

5          THE COURT:  So at this point, what I'm going

6     to do is I'm going to deny as moot Docket Number 132,

7     the motion to compel a complete answer to the third

8     amended complaint based on counsel's representation

9     that they will file an amended answer.

10          But Mr. Chesser, to the extent that you

11     receive that amended answer and you still believe it is

12     deficient, then I trust that you will let the court

13     know.  All right?

14          MR. CHESSER:  Okay.

15          MS. PROSE:  Thank you.

16          THE COURT:  All right.  All right.  So let's

17     move on to the informal discovery dispute chart that I

18     have in front of me.

19          The first issue I have is a list of every

20     terrorist inmate the BOP has housed since 1993 with the

21     dates of their arrest, their convictions, their

22     sentences, can place notation of the connection they

23     have to terrorism, and the terrorist programs that they

24     have been housed in, if any.

25          So let me ask you this, Mr. Chesser:  When

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 34

1   you say any terrorist inmate since 1993, as an initial

2   matter, that time period is too long.  1993 is

3   obviously almost 25 years, and that's simply too long

4   of a relevant period of time.  And when you say

5   terrorist inmate, are you limiting it to inmates who

6   have been convicted of terrorist activity?

7           MR. CHESSER:  Your Honor, okay.  So first I

8   note that I agreed in the informal process to limit it

9   to September 10th, 2001, because on September 11th,

10  2001, is when the BOP dramatically changed the way that

11  it was housing terrorists.  And I think that's a

12  significant date because of the potential for

13  overreaction.

14          Now, as for the definition of terrorist, I

15  defined it broader than those who were convicted of

16  terrorism.  I used a number of categories including

17  reference to, I think, the sentencing enhancement for

18  crimes of terrorism, and the BOP also designates people

19  as terrorists in their Century system.  This is

20  something they mentioned in their -- one of their

21  declarations, Docket 67-3.  So some people are

22  designated as terrorists or suspected terrorists by

23  the BOP that don't necessarily have a terrorism charge

24  per se.

25          So I went a little broader, but I defined it

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 35

1   as a certain set of inmates.  And I'm willing to amend

2   it if BOP had a problem with it, but I don't think they

3   had a problem with the definition.

4           THE COURT:  So let me ask you this:  How is

5   this relevant to the two claims that you have left?  So

6   how is it relevant to whether or not the BOP improperly

7   classified you and sent you to ADX simply based on

8   terrorism ties as opposed to considering other relevant

9   factors?

10          It doesn't seem relevant at all to me about

11  whether or not your -- whether or not your conditions

12  of confinement at ADX substantially burden your

13  sincerely held religious belief or if they are holding

14  you under the least restrictive conditions.

15          MR. CHESSER:  Okay.  So the first thing is

16  standing.  And the BOP claims that it has no policy, no

17  practice.  It doesn't send people to ADX based on their

18  ties to terrorism.  And in order to prove standing, I

19  have to prove that, one, it does, it has a policy or

20  practice or even just in my specific case it happened.

21          And from that perspective, under Federal

22  Rule of Evidence 406 which regards routine practices,

23  so if the BOP does something as a routine practice,

24  it's well -- it's evidence that in a specific instance,

25  they acted in accordance with that routine practice

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 36

```
 1   which would -- so if they have the practice in the
 2   first place, so say they send, you know, 20 percent of
 3   terrorists to ADX, that would be a pretty significant
 4   statistic, and it would show that there is a routine
 5   practice.  And the fact that there is a routine
 6   practice would be probative of the fact that those
 7   apply to me in the first place.
 8            Also, other terrorists are relevant from an
 9   evidentiary point of view for a number of reasons.  So
10   for example, the BOP is arguing my type of terrorism is
11   dangerous and that that danger justifies solitary
12   confinement and ADX placement, so --
13            THE COURT:  Mr. Chesser, let me interrupt
14   you there.
15            Are you in any other additional restrictive
16   housing in ADX?  Are you in ADX?  You're in ADX, but --
17            MR. CHESSER:  Right, yeah.
18            THE COURT:  To say you're in solitary
19   confinement in ADX, what do you mean?
20            MR. CHESSER:  Okay.  So ADX has different --
21   the reason I kind of did a weird definition of solitary
22   confinement is because, one, when I originally defined
23   it, I wasn't just addressing ADX; but two, the nature
24   of solitary confinement or the nature of the
25   restrictive housing at ADX changes as you go through
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 37

 1  it.

 2            So when I was in ADX GP, I had no physical

 3  contact with anybody whatsoever and I only had 10 hours

 4  of recreation per week.  Right now I'm in the step-down

 5  program and I have 21 hours of recreation per week and

 6  very limited physical contact with other inmates.

 7            And in later phases of the step-down

 8  program, assuming I'm not sent to a CMU -- if I'm sent

 9  to CMU, it's a different issue, but later phases of the

10  step-down program, they increase the amount of

11  recreation time and physical contact with inmates and

12  certain other things up to about, I think, 35 hours per

13  week, which is still significantly less than in normal

14  prison.  So that's why I gave that particular

15  definition of solitary confinement.

16            But I'm willing to refine that because the

17  limitation of the case -- I'll try to provide a new

18  definition of that going forward --

19            THE COURT:  Okay.

20            MR. CHESSER:  -- maybe consulting with the

21  BOP on it.

22            THE COURT:  All right.  Mr. Chesser, let me

23  let Ms. Prose respond quickly.

24            MS. PROSE:  Thank you, Your Honor.  With

25  regard to what Mr. Chesser just said, Your Honor, about

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 38

1   the need to establish, I believe he used the term

2   policy and practice -- he can correct me if I'm wrong.

3   For purposes of what's left of Claim 3, the BOP is

4   prepared to litigate the -- let me rephrase that.  The

5   BOP is prepared to address the fact that Mr. Chesser's

6   particular ties to terrorism were a part of the

7   consideration that brought him to ADX.

8            It seems to us, Your Honor, that there is no

9   need to litigate whether there may or may not be some

10  broader policy at issue, but rather in the RFRA to the

11  person context, the relevant issue to us seems to be,

12  did somehow taking those terrorism ties that

13  Mr. Chesser obviously has -- he is a convicted

14  terrorist, after all -- taking those into account, did

15  that violate RFRA.

16           And so this broader look that Mr. Chesser

17  wants to take, this is a core point of disagreement

18  that we respectfully have with Mr. Chesser.  So I would

19  say that as to the policy practice issue that

20  Mr. Chesser just raised.

21           Secondly, with regard to inmates outside of

22  the ADX and the information that currently Mr. Chesser

23  is seeking us to produce in connection with

24  Interrogatory Number 2, I do want to let Your Honor and

25  Mr. Chesser know what would be required logistically to

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 39

1   obtain that information about non-ADX inmates.

2           First of all, a roster of all the inmates in

3   the Bureau of Prisons is a snapshot of the people who

4   are in the prison on that particular day.  So in order

5   to -- even to go back to September 10th, 2011, in order

6   to even identify all persons who might fall ultimately

7   into Mr. Chesser's final definition of terrorism, we're

8   going to have to perform hand searches of files at the

9   National Archives Administration for released prisoners

10  and in prisons in every prison throughout the Federal

11  Bureau of Prisons.  This is a task, even to obtain this

12  information -- and I recognize Mr. Chesser quite likely

13  supposes that it would not be so difficult, but it is.

14          This task would take us weeks to perform.

15  Probably being very, very, I guess, optimistic, I think

16  it would take us probably two to three months to do

17  this even without a restrict- -- you know, even with a

18  smaller restriction on the time frame.

19          THE COURT:  All right.

20          MS. PROSE:  And of course as Your Honor

21  knows, we view this as not relevant to Mr. Chesser's

22  particular RFRA claim, but I did want you to know what

23  the logistical demands of this would be, and I've

24  discussed this at length with the Bureau.

25          THE COURT:  All right.  So -- go ahead.

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 40

1           MR. CHESSER:  Your Honor, okay.  I didn't

2    quite -- you know, I don't have detailed knowledge of

3    the BOP's filing system, so that sounds unreasonable.

4    So I would be willing to modify this to at least -- I

5    haven't addressed the issue of the compelling interest

6    (inaudible) but -- yet, but I would be willing to

7    modify this to right now -- like whatever the snapshot

8    is that they were talking about that they have readily

9    accessible right now and whatever the -- January 1st,

10   2006, because that's prior to another major -- just

11   that one day, if that's not so much of a burden for

12   them, because I think that date would provide a

13   snapshot of previous BOP policies that they applied to

14   terrorists and would give an indication of what worked

15   in the past or didn't work in the past if, you know,

16   they have proof that it didn't work in the past.

17           THE COURT:  All right.  So Mr. Chesser,

18   fundamentally, I think there is a disconnect as to what

19   you are challenging and what's left in this case.

20           So the way I see it -- and I don't -- and

21   you can provide me authority if you have it to persuade

22   me otherwise -- but how the BOP treats other inmates

23   separate from you with different characteristics does

24   not seem particularly relevant to me as to whether or

25   not the BOP violated RFRA in either considering your

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 41

 1   terrorism ties.

 2            So my understanding of that claim is the BOP

 3   was supposed to consider a lot of different elements,

 4   and in determining your placement, it only considered

 5   your terrorism ties.  And it appropriately --

 6   inappropriately considered your terrorism ties to

 7   assign you to ADX, and that violated your rights under

 8   RFRA.  And that is an individualized, particularlized

 9   analysis that I don't see whether other individuals

10   were treated differently is particularly relevant to

11   that.

12            The second thing is whether or not the

13   conditions of your confinement in Claim 4 violate --

14   again, particular to you -- violate your rights under

15   RFRA and whether or not the BOP had a less restrictive

16   means to house you in a different way.  And that may

17   require you to seek information about how other

18   comparable institutions, well-run institutions,

19   implement their policies.

20            But I don't particularly know that these

21   requests that you're directing:  Interrogatory Number

22   2, Interrogatory Number 3, Interrogatory Number 4,

23   Interrogatory Number 5 that are framed as these general

24   "state why you do things" are particularly individual

25   to why they did certain things with you.

 1          Now, certainly if they state a national

 2    policy and say, Well, we treated you like this because

 3    of the national policy, that might be something that is

 4    important for you to understand.

 5          But these broad-based "how did they treat

 6    other individuals," even individuals who might have

 7    been convicted or have -- classified as terrorists do

 8    not seem particularly individualized enough to overcome

 9    the burden of what it would be to respond to these

10    things and the concerns with respect to not only the

11    BOP's concerns, but I have some concerns that

12    classification information about how other inmates are

13    classified and how they have been treated implicates

14    some privacy issues with respect to those other inmates

15    that are not before this court.

16          And it is not at all clear to me that the

17    claims left in this case justify a broad reach of very

18    particular information about other inmates who have,

19    one, not waived any rights to privacy in this case; and

20    two, the concerns with respect to compilations.

21          So what I would like to -- I'm not going to

22    compel the Government to respond to Interrogatory

23    Number 2, 3, 4.  I think to the extent Interrogatory

24    Number 5 is tailored to say, State every reason you

25    contend that the CMU is not an adequate solution to

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 43

1  house Mr. Chesser at ADX, and all the evidence you

2  contend supports those -- that reasons or those

3  reasons, I think that is appropriate.

4          The BOP says they explained why CMU

5  placement is not an adequate solution for you, but to

6  the extent that you believe that that response is

7  inadequate, that's what I need to hear from you about,

8  not what -- not that CMU generally can't be used, but

9  why CMU couldn't be used in your particular case.

10          In addition, you ask, State every reason and

11  evidentiary support that -- of not being able to house

12  Mr. Chesser and some or all of the terrorists in open

13  population or their own cell ranges, either in the

14  manner of a traditional open population unit or like

15  ADX's JA and JB units where recreation inmates only

16  have physical contact with one another.

17          To the extent that that is limited to you

18  alone, Mr. Chesser, the Government needs to respond to

19  that.  The BOP has said in response they've explained

20  in detail why it cannot use alternative housing

21  arrangements.  Again, if you think that that response

22  is deficient in any way, that's what I need to hear

23  from you about, not a general policy, because it

24  doesn't sound to me -- and if I'm wrong, you let me

25  know -- doesn't sound to me like the BOP is saying,

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 44

1    Well, there is a general policy that we applied to

2    Mr. Chesser and that we didn't consider anything else.

3            And then with respect to Interrogatory

4    Number 7, whether or not you contend that Mr. Chesser

5    posed a physical threat, it seems like the BOP has

6    responded.  You say, The defendant has failed to answer

7    with respect to specific types of threat in question

8    and to provide -- Mr. Chesser poses a threat to Muslims

9    with whom he disagrees, and that is relevant to

10   determining whether Mr. Chesser can be safely housed

11   with some category of inmates in open population.

12           Now, does ADX have open population at all?

13           MR. CHESSER:  Yeah.  I'm -- well, I mean,

14   not the way that I defined it in the complaint, but

15   right now, I have some physical contact with other

16   inmates because I'm in the step-down program.

17           THE COURT:  Right.  I understand that.

18   But when I hear open population, that's not what I

19   understand --

20           MR. CHESSER:  Right.  Yeah.

21           THE COURT:  I don't understand ADX to have

22   any sort of open population.

23           MR. CHESSER:  No, it doesn't have any

24   traditional open population unit where inmates are just

25   able to leave their cells, you know, at one time in the

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 45

```
 1   morning and go back late at night.

 2              THE COURT:  Right.

 3              MR. CHESSER:  That doesn't exist, but there

 4   are degrees of increased physical contact throughout

 5   it.  So it's not a static program.

 6              THE COURT:  No, I understand that.  So

 7   again, to the extent that you did not believe the BOP

 8   has appropriately responded to Interrogatory Number 7,

 9   that specific complaint is what I need to hear from you

10   about, not a complaint that they haven't demonstrated

11   that you cannot be safely housed in some other category

12   of inmates in open population because there is not open

13   population in ADX.

14              So again, these claims are confined to how

15   you got to ADX and how they considered your terrorism

16   ties and if they inappropriately excluded all other

17   factors and therefore violated RFRA in assigning you to

18   ADX.  And the second claim, whether or not the

19   conditions of confinement at ADX, as applied to you,

20   violate your rights under RFRA.

21              So looking at just what I have with respect

22   to Interrogatory Number 7, it is not clear to me that

23   there is a deficiency, but if there is a specific

24   deficiency with respect to the response, that's what we

25   need to be discussing.
```

Zachary A. Chesser vs.                         Transcript of Audio Recorded Discovery Conference
Director of Federal Bureau of Prisons                                                 June 14, 2017

Page 46

```
 1              And the last one with respect to the
 2  contentions regarding the reasons for Chesser's ADX
 3  placement, state whether and how, to what extent the
 4  justifications differentiate him from other terrorists
 5  not at ADX and from non-terrorists who have not been
 6  sent to ADX that are -- that have maximum custody
 7  scores as a result of disciplinary refractions and
 8  prison violence.
 9              What I understand for you to be asking is
10  why or how having to differentiate yourself or explain
11  why your particular case resulted in your placement at
12  ADX.  So I don't know that it's relevant -- I mean, to
13  the extent that you want them to tell you whether or
14  not other terrorists are not at ADX, I think that they
15  should admit that, if other terrorists are not at ADX.
16  That actually seems to cut against your claim,
17  honestly, that your terrorism ties are the only thing
18  that led you to your placement at ADX, but you can ask
19  it that way.
20              But the -- I mean, again, I think the
21  implication that other terrorists have been treated
22  differently -- I'm not sure how that is relevant to
23  your remaining claim.
24              MR. CHESSER:  Your Honor, do you mind if
25  I -- there is a whole concept that basically all these
```

1    are based on that we didn't get to touch on called

2    underinclusivity.

3              So the reason I'm asking about other

4    inmates, and specifically other terrorists, is

5    because -- so as Judge Gorsuch mentioned in Yellowbear

6    versus Lampert at, you know, 741 48 at 60, 10th Circuit

7    2014, allows underinclusiveness its failure to cover

8    significant (inaudible) conduct in stating laws

9    (inaudible) compelling interest and raised with it the

10   inference that the Government's claimed interest is not

11   actually so compelling after all.  Evidence that the

12   prison grants secular exemptions more readily than

13   religious exemptions punitively compelling policy can

14   raise with it the inference, too, that its most

15   compelling interest would actually be discrimination

16   against or at least indifference to their religious

17   liberties of incarcerated persons.

18             And now Yellowbear was an as-applied

19   challenge by one single inmate, and the court

20   considered how the inmate -- he wanted to access a

21   sweat lodge, which he was called restrictive housing,

22   and wanted to access a sweat lodge that wasn't in the

23   restrictive housing unit.  And the court considered how

24   the prison conducted lockdowns to transport other

25   inmates that were (inaudible) to various locations.

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 48

```
 1              Now, so -- and just to get into the next
 2   part of what Judge Gorsuch explained before I cover how
 3   it applies to this case, so Judge Gorsuch goes on to
 4   explain how underinclusivity can be refuted, so he
 5   says, The Government can rebut an argument from
 6   underinclusion by showing that it hasn't acted in a
 7   logically inconsistent way by, say, identifying a
 8   qualitative or quantitative difference between a
 9   particular logistic exemption requested and other
10   secular exemption already tolerated; and then
11   explaining how such differential treatment furthers
12   some distinct compelling governmental concern.
13              And also, the Supreme Court in Holt versus
14   Hobbs applied the same general adoption.  It was an
15   as-applied challenge by one single prisoner, the way
16   that he was treated, but they considered the way that
17   all other prisoners in the prison were treated with
18   respect to the issue.
19              Now, as for my specific claims, so for
20   one -- okay.  So the court may not realize this, but
21   the -- over 90 percent of the BOP's terrorists are
22   housed in open population.  And I was housed in open
23   population before I was sent to ADX.  I was just housed
24   in a unit where it makes it very easy to be sent to ADX
25   if you're a terrorist.
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 49

1          And so this main set policy or the practice

2   or whatever that holding terrorists in ADX, the idea

3   applies to terrorism in the abstract formulating some

4   sort of compelling interest, while it's underinclusive

5   in this respect because, well, they don't do that with

6   90 percent of the terrorists, they only do it with

7   10 percent of the terrorists.

8          Now, the BOP can refute this potentially --

9   I don't know if they have any evidence or whatever.

10  They haven't asserted anything.  But in order to refute

11  it, they have to provide, as Judge Gorsuch said, some

12  qualitative or quantitative difference which creates a

13  separate compelling interest which justifies the

14  differential treatment.

15         So from that perspective with respect to

16  Count 3 -- and also, part of my Count 4 really deals

17  with terrorism because I think terrorists have a better

18  shot in terms of solutions to the practice of solitary

19  confinement.  But the -- so from that perspective, that

20  is one of the reasons I'm asking about, you know, the

21  BOP's terrorists in general because the BOP needs to

22  show that I'm more like an ADX terrorist than a non-ADX

23  terrorist to say that my ties to terrorism further

24  compelling interest in (inaudible) ADX least

25  restrictive means of furthering that compelling

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 50

1    interest.

2              The reason I've seen about non-terrorists

3    in many cases is because the BOP also has this other

4    argument that, Oh, well, I assaulted somebody and I

5    have an extortion incident report, and so they have to

6    list (inaudible) my ties with terrorism don't create

7    compelling interest, they have to show that my other

8    conduct created a compelling interest.

9              And in order for me to refute this, I have

10   to show -- I mean, there is other ways, but one of the

11   ways to show is that people that engage in the type of

12   assault that I engaged in -- and BOP has data on this

13   type of assault since they have to track it by

14   policy -- that these inmates are not normally sent to

15   ADX.  If they are not normally sent to ADX, that tends

16   to prove that the BOP's policy -- or the way that they

17   implemented -- or whatever it is, the reason I was sent

18   to ADX doesn't actually further a compelling interest.

19   It might further a rational interest, might further a

20   substantial interest, but underinclusion by law

21   precludes compelling interests from -- a compelling

22   interest is used to create the differential treatment.

23             And so there is differential treatment --

24   I'm trying to establish that there is differential

25   treatment -- there is, but I have to establish it via

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 51

 1   admissible evidence.

 2           And then a lot of things are aimed at

 3   determining, okay, so there is differential treatment,

 4   do you have a compelling reason for that differential

 5   treatment.

 6           And I personally -- one of the reasons I'm

 7   asking about all terrorists is because, for example, a

 8   lot of the 1998 Embassy bombers who have, you know,

 9   hundreds of deaths on their record and they are

10   Al Qaeda members, an Al Qaeda member, they are not in

11   ADX anymore.  So why am I in ADX over my ties of

12   terrorism, but these guys aren't?  So where is the --

13   why am I -- what's the -- which type of terrorist am I

14   more like?  Am I more like the ones that aren't usually

15   held in ADX or am I more like the ones that are held in

16   ADX even if there is a compelling reason to hold

17   terrorists in ADX in the abstract, which one am I more

18   like?  And that's, you know, Yellowbear was -- the Lupa

19   (phonetic) case, which is the same thing as Retra

20   (phonetic).

21           The case Holt versus Hobbs was -- the Lupa

22   case.  There is also another case in the District of

23   Kansas, which explains the -- called Hughes versus

24   Hinegardner (phonetic) where a Muslim prisoner who was

25   in solitary confinement was complaining that his -- he

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 52

```
 1   wasn't able to receive (inaudible) meal, which is a

 2   religious meal in Islam.  And he was arguing the policy

 3   was underinclusive because inmates that weren't in

 4   segregation were able to have it because they would

 5   just strip search them after -- I don't know why the

 6   prisons had to strip search them, but --

 7              THE COURT:  Mr. Chesser, I'm going to stop

 8   you.

 9              MR. CHESSER:  Okay.

10              THE COURT:  I'm not going to make -- I can

11   hear that you're very passionate about this, and I'm

12   not going to be able to make a different determination

13   based on your oral argument today.

14              So what I'm going to do is I'm going to set

15   a deadline for two weeks from today, which is

16   June 28th, 2017.

17              You each can file a supplemental brief that

18   is limited to 10 pages or less.  Given your handwriting

19   issues, Mr. Chesser, you can have 15 pages if you want

20   because you're handwriting it.  But please handwrite it

21   in a way that is legible for the court.  And you can

22   brief this issue of whether or not these particular

23   interrogatories that are identified should be answered

24   by the BOP based on solely an underinclusivity theory,

25   okay.
```

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 53

```
 1              So your brief is limited to this argument
 2    that this information is necessary to -- for this
 3    underinclusivity theory.  Does that make sense?
 4              MR. CHESSER:  Okay.  Do you want me to,
 5    right now, though, address the issues?  Because there's
 6    some issues that I think are just -- they are not
 7    complicated legal issues.  They are just --
 8              THE COURT:  I do not.  Because the way I see
 9    it right now, is that your two claims are as-applied
10    claims that are specific to you as an individual, your
11    placement as an individual to ADX, and your treatment
12    at ADX under RFRA.
13              And so quite frankly, I don't see right
14    now -- although if you can persuade me otherwise, happy
15    to consider it -- how other people's treatment with
16    different specifics makes them any sort of comparator
17    or relevant to your case.  I just don't see it right
18    now.
19              So I think it would be better for me -- it
20    would be easier for me to follow if you put it in
21    writing rather than having me listen to your oral
22    argument right now.
23              MR. CHESSER:  Okay.
24              THE COURT:  Now, again, with respect to
25    these interrogatories as individualized to you and
```

Page 54

1   BOP's treatment of you as a particular individual, if

2   there is something about the BOP's response that you

3   think is inadequate, then that is what we should be

4   focused on, not the sort of general policy

5   considerations or how every other potential comparator

6   compared to you.  Does that make sense?

7           MR. CHESSER:  Okay.  Do you need me to

8   address those particular right now?

9           THE COURT:  No, I don't even know that you

10  have those, Mr. Chesser.

11          So what I hear from you right now is that

12  you want something more than information about how the

13  BOP specifically treated you.  And before I'm going to

14  give you information or compel BOP to provide

15  information that is not particular to you, I need to

16  understand your theory of that.

17          MR. CHESSER:  Okay.  There are -- there

18  is one interrogatory here where it is definitely

19  totally -- I guess maybe it's better to just brief

20  that.  Okay.

21          THE COURT:  All right.  All right.  So with

22  those directions and with the court's prior ruling on

23  the pending motions for discovery and the denial of 132

24  as moot given the Government's representation that they

25  are going to be filing an amended answer on June 19th,

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 55

1    2017, is there anything else we need to discuss today?

2          MS. PROSE:  Your Honor, I don't think we

3    have anything else.  I just want to make sure I

4    understand, you want the Government's submission

5    on June 28th as well to be solely limited to the

6    underinclusivity analysis?  Is that what you want?

7          THE COURT:  Yes.

8          MS. PROSE:  Okay.  We will do that.

9          And then secondly, Your Honor, we just want

10   to put out there that the BOP is somewhat concerned

11   that there is a notice of intent to file yet another

12   amended complaint.

13         THE COURT:  I understand there is a notice

14   of intent to file an amended complaint.

15         I'm going to tell you, Mr. Chesser, that to

16   the extent that you are just trying to add factual

17   allegations, I don't think you need to.  To the extent

18   you are trying to add additional claims, I don't think

19   this is the appropriate action to do so.

20         This case has been going on for a long time.

21   It was transferred from the District of -- the District

22   of Columbia.  I would be inclined -- I am inclined as

23   the presiding judge to proceed on the two -- the two

24   claims that we have in this case.  To the extent that

25   you have different claims, those need to go through a

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 56

1    different Section 1915 process.

2            So any time an inmate files a case in forma

3    pauperis, it goes through a process by the court, by

4    different judicial officers, in terms of considering

5    whether or not there has been an appropriate claim

6    pled.  This claim and these claims, this case, is not a

7    vehicle to continue to add on new claims.

8            So I understand that there is a notice of

9    intent to file a third amended complaint if deposed by

10   the Government.  Quite frankly, I think we need to

11   proceed with the claims as is.  And to the extent you

12   have other claims against the BOP or against individual

13   wardens at ADX or anything else, I believe those need

14   to go in a separate claim, a separate cause of action.

15   Okay?

16            MR. CHESSER:  Okay.

17            THE COURT:  All right.

18            MR. CHESSER:  Your Honor, do you mind if I

19   mention one issue that we uncovered just to see if you

20   don't mind if I brief the one second issue that's

21   pretty related to this one?

22            THE COURT:  All right.  Go ahead.

23            MR. CHESSER:  That obviously part of my

24   claims -- or in order to have meaningful relief, I have

25   to have access to another inmate, at least more than

Zachary A. Chesser vs.
Director of Federal Bureau of Prisons

Transcript of Audio Recorded Discovery Conference
June 14, 2017

Page 57

1  one, really, to have a full relief.

2          But -- so part of why I'm mentioning other

3  inmates is to establish that there are, for example,

4  potentially people at ADX where they could implement

5  the solutions that have -- just kicking out of ADX,

6  maybe there is a lesser (inaudible) solution at ADX

7  with some ADX inmates that's feasible, and that's also

8  one of the reasons why I was asking about other inmates

9  to see if there is others that -- and the BOP actually

10  responded about other inmates while in -- from that

11  perspective on one of the interrogatories.  They didn't

12  do it on the other ones.

13          But do you mind if I explain the relevance

14  of that, because it also has to do with

15  underinclusivity?  Because I would have to establish

16  theoretically that there is no compelling interest in

17  denying me access to other inmates because of those

18  other inmates as opposed to something intrinsic in

19  myself.

20          THE COURT:  Whatever you want to brief with

21  respect to underinclusivity needs to be in that 15

22  pages within two weeks.

23          MR. CHESSER:  Okay.

24          THE COURT:  All right.  And then once I see

25  the various briefs, I may ask for you all to respond to

Page 58

1   each other, but I'll wait until I see how the issues

2   line up.

3                MR. CHESSER:  Okay.

4                THE COURT:  All right.  Anything else?

5                All right.  Hearing nothing further, we will

6   be in recess.  Thank you very much.

7                MR. CHESSER:  Thank you.

8                (Whereupon, the within hearing was then in

9   conclusion at 3:41 p.m.)

10

11

12                I certify that the foregoing is a correct

13   transcript to the best of my ability to hear and

14   understand the audio recording and based on the quality

15   of the audio recording from the above-entitled matter.

16

17   /s/ Lisa Persichitte Reed                June 27, 2017

18   Signature of Transcriber                 Date

19

20

21

22

23

24

25