# Attachment 17
# Declaration of David Jones

# December 19, 2013, Administrative Maximum Referral for Chesser

*Chesser v. Bureau of Prisons*, No. 15-cv-01939-NYW



**U.S. Department of Justice**
Federal Bureau of Prisons

United States Penitentiary

Office of the Warden          Marion, Illinois

December 19, 2013

MEMORANDUM FOR    PAUL M. LAIRD, REGIONAL DIRECTOR
                 NORTH CENTRAL REGIONAL OFFICE

FROM:            J. S. Walton, Warden

SUBJECT:         **Administrative Maximum Referral (ADX – GP)
                 CHESSER, Zachary, Reg. No. 76715-083**

**1. Rationale for Designation:**

Chesser is being recommended for placement in the ADX-GP based on the following criteria.

- The inmate's placement in other correctional facilities creates a risk to institutional security and good order, or poses a risk to the safety of staff, inmates or others, or to public safety.

Further, it is believed Chesser is appropriate for designation to the ADX based on the following factor.

- The inmate has been identified as participating in, organizing, or facilitating any group misconduct that adversely affected the orderly operation of a correctional facility.

During his incarceration in the BOP, which specifically has been at MAR CMU, Chesser has been a disruptive influence on the inmate population and security of the unit.

He has been involved in what are classified as indoctrination activities, which have included the circumvention of BOP policies and regulations, attempting to function as an inmate leader, engaging in physical violence and assaults against other inmates, advocating for physical violence against others, and attempting to usurp and circumvent the authority of staff by making demands regarding the care and custody of other inmates based on his perceived influence among the inmate population.

Sensitive But Unclassified
FOIA Exempt
Page 1 of 7

FOIE BOP000083

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

It is believed his conduct indicates he requires greater security and controls than which can be afforded him while in a typical general population setting, or in a CMU. His disciplinary history, conduct and behavior has shown a disregard for rules and regulations, a threat to the physical safety of other inmates and staff, and adverse effect on institution safety and security.

Based on his actions which threaten institution security, as well as the safety of staff and inmates, and coupled with his need for greater security due to his militant, radicalized actions, it is recommended Chesser be transferred to the ADX where his behavior can be more strictly controlled and his communications can continued to be monitored.

Chesser has a history of subscribing to a radicalized Islamic philosophy and has maintained a consistent interest in radical forms of Islam. This is evident from his pre-incarceration behavior, offense conduct, and incarceration behavior and conduct. While incarcerated, Chesser has continued to espouse radicalized Islamic philosophy and has demonstrated a profound expansion of his extremist views and ideology. Frequently, Chesser has specifically and directly advocated violence against non-Muslims, and in particular against the United States and other Western countries allied with the U.S. Chesser has also advocated the use of terrorism and has expressed support for Al Qa'ida and al-Shabaab, both designated Foreign Terrorist Organizations. He has also expressed support for the Taliban.

Specifically, Chesser made the following statements in an e-mail message to his wife on October 31, 2013, which demonstrates his support of violence and terrorism.

> "As a Muslim, I advocate, teach the duty, necessity and propriety of violence as a means of accomplishing reform. We are not a vengeful people, but if this country continues to suppress the Muslim people, it is possible that there might have to be some vengeance taken. Should this practice continue, we shall be forced to don the shroud of mortality and march before this nation's capitol to demand its end and express ourselves."

> "So let the record forever hold that I advocate violence; I advocate terrorism; I believe they are necessary to achieve reform; I believe they are morally justified; I hate America; I hate its people; I beg my Lord to kill them; I shall forever fight them within the bounds of the law; I shall ever stand against them."

A review of Chesser's conduct, behavior, and communications while incarcerated, indicates he is becoming more radicalized, demonstrating intolerance towards those who challenge his beliefs and fighting against all who attempt in any way to alter his belief system and the application of his beliefs in his day-to-day life. This fight against others has included the threat and actual use of physical harm and violence.

In an October 2013 deposition for a federal civil case, Chesser admitted he and other inmates purposefully disregarded and disobeyed institution regulations which they did

Sensitive But Unclassified
FOIA Exempt
Page 2 of 7

FOIA Exempt

BOP000084

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

not agree with, specifically citing policies which precluded unauthorized group prayer and the call to prayer. Since his arrival in MAR CMU on May 2, 2011, Chesser has received four (4) incident reports relating to his engaging in unauthorized inmate group meetings. Chesser continues to advocate for others not to follow institution rules and regulations which he does not agree with, particularly those rules which he believes violate his personal religious beliefs. Chesser advocates his position to the persons in the community through his social communications, as well as to other Muslim inmates in the unit, many of whom similarly engage in illicit activities with him. In each of the four instances identified above, at least three other inmates similarly engaged in the disruptive conduct, and in most cases four or five other inmates were participants. Though he purported group prayer was an obligation for Muslims, Chesser admitted some Muslim inmates in MAR CMU were not willing to break BOP rules to engage in group prayer, predominantly because those inmates did not want to face disciplinary action and possible sanctions which would restrict their privileges.

Subsequently, in an e-mail message to his wife, Chesser specifically stated he would continue to disregard institution rules and regulations which he does not personally agree with and which he believes conflict with his interpretation of his religious faith and practice. Chesser made the following statement: "I also do not think that staying away from your home is worth the damage it does to your imam. There are a dozen things I do in this place knowing they can write incident reports for them whenever they want, throw me in the SHU and take away my good time, but I still do them, because it is not worth the damage avoiding them would do to my imam and the brothers in this community."

In August 2013, Chesser assaulted inmate ▆▆▆▆ by entering ▆▆▆'s cell and striking him repeatedly. The incident was precipitated by Chesser engaging in the Islamic call to prayer, where he used a loud voice to project the call on the range and throughout the unit. In response to the call to prayer, ▆▆▆ had been singing, "God Bless America," simultaneously. In this instance, ▆▆▆ complained to staff about the call to prayer, and Chesser was directed to immediately cease his actions. Chesser attacked ▆▆▆ in retaliation. Chesser later informed his wife that he had assaulted ▆▆▆ for mocking the Islamic religion. Though Reed ultimately placed Chesser in a head-lock until responding staff restrained both inmates, Chesser bragged that he had come out on top of the assault, and further purported the incident would benefit his civil law suits.

Chesser claimed other inmates had discussed with ▆▆▆ his mocking of Islam, but Chesser himself had not. When ▆▆▆ approached staff regarding the call to prayer, and staff took corrective action, Chesser viewed the incident as a further banning of religious practices. The issue at hand was a mocking of Islam, according to Chesser, which added to the pressures he claimed he was under, due to what he called the bans on his religious practice. During his hearing before the Discipline Hearing Officer (DHO), Chesser proudly admitted he had, "defiantly started the exchange." Chesser continued by stating he had entered inmate ▆▆▆'s cell, was the first to strike and had started the fight. Describing ▆▆▆ as a bigot, Chesser claimed ▆▆▆ had repeatedly

Sensitive But Unclassified
FOIA Exempt
Page 3 of 7

FOI
E BOP000085

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

---

made negative comments about Islam, and, "it just got to me."

On November 29, 2013, inmates ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (animal rights extremist), and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Islamic extremist, inspired by Al-Qai'da), were involved in a fight in MAR CMU. Closed circuit video surveillance revealed Chesser had intervened in the incident, physically separating ▓▓▓ from ▓▓▓▓▓. Previously, in February 2012, ▓▓▓ converted to Islam after having been housed in MAR CMU for less than one month. A radical animal rights activist and self-described, "Lone Wolf," ▓▓▓ claimed he had never been partial to any religion, however had discovered what he called devoted Muslims in MAR CMU. Though ▓▓▓ initially described his fellow Muslim brothers as some of the most amazing individuals he had ever met, by August 2012 he had amended his views and claimed the Muslim inmates were evil, radical and embraced terrible ideas. In September 2012, ▓▓▓ changed his religious preference and separated himself from the Islamic religion and Muslim inmates in MAR CMU. ▓▓▓ openly criticized the Muslim inmates, both in his communications and direct interactions within the unit. Frequently confrontational, ▓▓▓ criticized the Muslim inmates and their religious beliefs, labeling them as fanatics and ultra-orthodox who were full of hate and sick ideas based on human centric self-absorbed beliefs. Such confrontations routinely placed ▓▓▓ at odds with the Muslim population, particularly Chesser, who took offense to his criticism of Islam.



Subsequently, on December 4, 2013, Chesser submitted an electronic Request to Staff in which he stated ▓▓▓ would not be safe if he were allowed to return to the population of the MAR CMU from the Special Housing Unit. Further, Chesser stated ▓▓▓ would not be safe if he was transferred to the CMU at Terre Haute, as well. However, Chesser offered that if inmate ▓▓▓▓▓▓▓ was released from the Special Housing Unit, his ADX referral stopped, and ▓▓▓ returned to the MAR CMU population, then Chesser himself would, "work something out," in the MAR CMU to ensure ▓▓▓'s safety. More directly, Chesser purported the Muslim inmate population at both MAR CMU and THA CMU would be the cause of potential harm to inmate ▓▓▓ and he, Chesser, could control the Muslim inmate population at MAR CMU to ensure ▓▓▓'s safety. Staff viewed the statements made by Chesser as an attempt to extort staff by negotiating the release of ▓▓▓ from the Special Housing Unit, in exchange for guarantees over the physical safety and welfare of ▓▓▓. Chesser's actions threatened the security and orderly running of the institution by attempting to manage and control the inmate population, including those inmates who are placed in and released from the Special Housing Unit, and preclude staff from making and enforcing decisions based on the safety of inmates and security of the institution. Inmate Chesser was issued an incident report for code 299, Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons [most like code 203, Threatening Another with Bodily Harm, and code 204, Extortion].

In documents found in his possession after his recent placement in Administrative Detention, staff discovered extensive writing by Chesser detailing his views on violent jihad and physical aggression against non-Muslims. These documents demonstrated Chesser's extremist and radical religious views which justified the use of violence and

---

Sensitive But Unclassified
FOIA Exempt
Page 4 of 7

FOIA Exempt

BOP000086

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

---

even killing of non-Muslims who are considered to have engaged in conduct not suitable to Chesser's personal belief system. In one section, Chesser detailed efforts which must be undertaken by all Muslims to kill non-Muslims, even stating those handicapped in wheelchairs could pursue such an endeavor. Chesser claimed it would be easy for anyone to kill even dozens of non-Muslims with rocks, pipes and other readily available materials without training or financing. Regarding his prison jihad, Chesser claimed such activities would include short bouts of hand-to-hand combat, and that incarcerated Muslims must look to engage in violent jihad at all times. Specifically, Chesser claimed opportunities arose each and every time a Muslim was around staff and in an effort to escape from incarceration. Chesser made the following statement.

> "Moreover, one should not view capture as the end of one's Jihad. Especially in America, there are many opportunities for Jihad. In prison, one often has to defend the blood or honor of the Muslims by risking one's life and fighting the Kuffar from the prison gangs. Also, any time one is around his captors, there is an opportunity, whether or not one thinks it will lead to their escape. At the very least, so long as one intends to fight Jihad when they are released, they could get Ajr like they are in Jihad that entire time and the Ajr of having patience during trials."

Though he associates with all Muslim inmates in his unit, Chesser is currently more closely affiliated with a small group of five inmates. These younger, more radicalized inmates, share similar beliefs as Chesser, in particular regarding violent jihad, anti-American sentiments, and advocating violence and terrorism against the U.S. military and what are considered innocent victims, such as the Boston Marathon bombing. While most of these inmates are also Muslim converts, they are all U.S. born citizens and have convictions directly related to attempts to engage in violent acts of terrorism domestically.

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

After [redacted] was placed in Administrative Detention for his involvement in a physical altercation with other inmates, Chesser stepped-up and has been viewed as the leader of this group. Both staff and inmates have reported observing Chesser praising Allah for the outcome of acts reported in the news media where an American soldier was killed, as well as for other acts of terrorism which resulted in the loss of non-Muslim lives, particularly those of Americans.

Similar to his offense conduct, Chesser's efforts to disrupt government operations continue to be a focus of his actions. Much like his plan to desensitize law enforcement through fake improvised explosive devices, Chesser attempted to organize a campaign to flood the government with enormous amounts of Freedom of Information Act (FOIA)

Sensitive But Unclassified
FOIA Exempt
Page 5 of 7

FOI Exempt
BOP000087

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

requests. Chesser believed the government would be required by law to answer the requests which would consume available staff time and significantly hinder other government functions and operations. At such a point, Chesser believed the government would acquiesce to his religious practices demands. However, Chesser failed to consider that he would not be permitted to organize such a protest, particularly one which advocated what could be perceived as a criminal effort to undermine the statutes governing FOIA and interfere with the operation of the government. Chesser developed a scheme to circumvent the rejection of his communications which advocated violence and terrorism. In one case, Chesser read from rejected e-mail messages while in front of a unit closed circuit surveillance camera. After requesting staff preserve the recording as evidence, Chesser then recommended the BBC obtain copies of the preserved video recording through a Freedom of Information Act (FOIA) request. Chesser was ordered by staff to cease recording personal messages on closed-circuit video systems.

In an effort to further his views, Chesser has sought guidance and direction from a number of sources in the community, including Islamic scholars of whom Chesser has requested decrees (fatwas) in order to direct the action and beliefs of other inmates, as well as persons in the community through web sites managed by his wife. In some cases, Chesser has sought and obtained guidance from individuals known to be ideologues and extremists within the so-called "jihadi" movement.

**2. Proposed Transfer Code:** 307, Institution Classification, Transfer to an Institution with Greater Security

**3. CIM Assignment:** Broad Publicity, Separation, Special Supervision

**4.**

**5. Release Destination:** Virginia, Eastern

**6. Medical Status:** Inmate Chesser is a Care 1 / Care 1-MH inmate. There are no indications of medical or dental concerns which would preclude his placement in the ADX.

**7. Does Inmate Concur With Transfer:** The inmate's opinion was not solicited.

**8. Additional Pertinent Information:** Inmate Chesser is a 23-year-old, white male. He is a citizen of the United States. His security level is MEDIUM; his custody level is

Sensitive But Unclassified
FOIA Exempt
Page 6 of 7

FOI Exempt BOP000088

Chesser v. BOP,
15-cv-01939-NYW

Administrative Maximum Referral (ADX – GP)
CHESSER, Zachary, Reg. No. 76715-083

IN. Chesser pled guilty to Communicating Threats [18 USC § 875(c)]; Soliciting Others to Threaten Violence [18 USC § 373]; and Attempting to Provide Material Support to a Designated Terrorist Organization [18 USC § 2339B]. He was sentenced to 300 months incarceration, with 3 years supervised release. He is schedule for release from custody on May 24, 2032. His disciplinary history contains the following sanctioned incident reports.

```
12-05-2013 PEND DHO 2523214 299 Disruptive Conduct - High

12-06-2013 2523351 331 Possessing a non-Hazardous Tool
09-17-2013 2480658 224 Assaulting Without Serious Injury
09-21-2012 2352522 315 Participating in Unauthorized Meeting
07-02-2012 2320695 316 Being In Unauthorized Area
03-01-2012 2273277 316 Being In Unauthorized Area
11-07-2011 2229590 315 Participating in Unauthorized Meeting
```

Sensitive But Unclassified
FOIA Exempt
Page 7 of 7

FOI Exempt   BOP000089

Chesser v. BOP,
15-cv-01939-NYW