IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01939-NYW

ZACHARY A. CHESSER,

    Plaintiff,

v.

DIRECTOR, BUREAU OF PRISONS,

    Defendant.

**REPLY IN SUPPORT OF BOP'S MOTION FOR SUMMARY JUDGMENT (DOC. 180)**

    Chesser has failed to demonstrate the existence of any genuine dispute concerning the judgment of BOP correctional professionals that he must complete all phases of the ADX Step-Down Program in order to protect the security of inmates, prison staff, and the public. He has also failed to show the existence of any genuine dispute concerning the officials' assessment that he has the maximum opportunities for congregate religious activities that can be allowed without compromising the BOP's compelling security interests in his case.

    Chesser does not attempt to dispute the BOP's facts, and his efforts to undermine the BOP's evidence do not succeed. He merely re-characterizes the record facts, disagrees with the correctional judgment of BOP officials, and provides a self-serving assessment about how the BOP should have judged his actions. Chesser's personal views fail to create a genuine dispute in the face of a detailed record from BOP officials, whose judgments are entitled to deference.

    Chesser's attempt now to seek relief regarding housing units other than B/B Unit, where he is housed at USP Florence, is misplaced. The Court lacks subject-matter jurisdiction over that

claim.[1] His argument that the BOP does not have a compelling national security interest in managing his confinement is not the law. A convicted terrorist has no right to "advocate jihad" in prison, and the BOP can take proactive measures to prevent him from harming national and institutional security. At bottom, Chesser disagrees with the informed judgment of BOP officials, but his disagreement does not give rise to a genuine dispute. The BOP is entitled to summary judgment on both Claim III and Claim IV.

## I.     The BOP's facts are undisputed.

### A.     Chesser did not attempt to raise a genuine dispute.

Chesser makes no attempt to dispute any of the 79 facts the BOP set forth in its motion. Doc. 180 at 2-23. Instead, he accuses the BOP of mischaracterizing the evidence, then specifically disclaims any intention "to set the record straight when so few of these efforts are truly relevant." Doc. 191 at 4. Because Chesser has failed to "set the record straight," the BOP has shown "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Rule 56(c)(1)(A) (non-movant must "cit[e] to particular parts of materials in the record" to establish a genuine dispute).

### B.     Chesser's evidentiary arguments fail.

Instead of disputing facts, Chesser objects to evidence. He fails to show any deficiencies.

#### 1.     The declaration of a Counter Terrorism Unit official is admissible.

Chesser claims the declaration of David Jones, a BOP Counter Terrorism Unit ("CTU") Intelligence Analyst, Doc. 180-2, is inadmissible because Mr. Jones lacks "personal knowledge" of Chesser. Doc. 191 at 3. Courts have routinely rejected this exact argument. As Mr. Jones

---

[1] The BOP explains why that claim is moot in its response to Chesser's motion. Doc. 198 at 8-11.

explained, in addition to having monitored Chesser's communications since February 2017, he has access to documents maintained by the BOP in the ordinary course of business, including intelligence documents like the BOP's Profile and Assessment of Chesser. Doc. 180-2 ¶¶ 3, 4; Doc. 181-3. Mr. Jones is allowed to submit a declaration based on his review of such records.

Personal knowledge under Rule 56(c)(4) "can be based on a review of relevant business files and records." *Del Rosario v. Labor Ready Southeast, Inc.*, 124 F. Supp. 3d 1300, 1316 (S.D. Fla. 2015); *see also Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005) (Fed. R. Evid. 602 permits a lay witness to testify about knowledge the witness obtained from reviewing records); *Brown v. Armendariz*, No. 3:07-cv-2154, 2009 WL 812149, at *4 (N.D. Tex. Mar. 26 2009) (rejecting inmate's argument that a BOP lieutenant could not provide a declaration based on his review of official BOP files and records: "Because the information is based upon his personal knowledge or knowledge of official business records, he is competent to testify and his statements do not fall within the definition of hearsay.") (citations omitted).[2] The BOP is not required to track down persons with firsthand knowledge of his criminal conduct, his longstanding hatred of the United States, and his devotion to violent jihad. Chesser disagrees with the content of Mr. Jones's declaration—or at least wants the Court to disregard it—but an inmate's disagreement with a BOP official is not a basis for excluding his declaration. *Armendariz*, 2009 WL 812149, at *4.

---

[2] *Accord, e.g., Stojkowski v. Fisher*, No. 10-2390, 2011 WL 1831680, at *3 (D. Minn. April 18, 2011), *adopted*, 2011 WL 1827468 (D. Minn. May 12, 2011); *see also Zaring v. Wiley*, No. 09-cv-00689-PAB-BNB, 2010 WL 5477060, at *3 (D. Colo. Mar. 2010), *adopted*, 2010 WL 5475641 (D. Colo. Dec. 2010), *aff'd*, 426 F. App'x 644 (10th Cir. 2011).

### 2. The BOP's factual assessment of security risks is admissible evidence.

Chesser claims the evidence presented by BOP correctional officials is inadmissible "lay opinion" testimony because the BOP has not shown they have "national security" or "penological" expertise. Doc. 191 at 4-5 (asserting that Christensen and Jones lack "national security expertise" and that Henderson is not a "penological expert"); *see also id.* ("lay opinion" allegedly found in BOP Facts 43, 49, 71-73, 75). This analysis rests on a significant error.

The officials' testimony is not "opinion" testimony at all, but fact testimony about matters they address in the course of their normal job duties. These officials are charged with protecting both institutional and national security; that is the work they do on a daily basis. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (maintaining "prison security is a compelling state interest"); *Rezaq v. Nalley*, 677 F.3d 1001, 1005 (2012) (recognizing the "uniquely federal penological interest in addressing national security risks"). Here, they testified about factual information known to them, explained how they evaluated that factual information in light of their knowledge of correctional management, and discussed the conclusions they reached to execute their duty to protect national and institutional security. Doc. 180, Facts 43, 49, 71-73, 75.

These correctional officials, whose expertise stems from their experience in the field, are the right witnesses to present this fact testimony. They are entitled to deference for their judgments on security matters. "Such considerations are peculiarly within the province and professional expertise of corrections officials, and . . . courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979). The officials do not have to wait for confirmation that Chesser intends "imminent violence" or to "plot, solicit, conspire or attempt a terrorist attack," Doc. 191 at 5, 6, before they can take proactive steps to

prevent future harm. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33, 34-35 (2010) (in national security arena, "conclusions must often be based on informed judgment rather than concrete evidence"). Those proper proactive measures include the restrictions in B/B Unit.

### 3.     Chesser's statements about his stature as a terrorist are admissible.

Chesser's own statements exalting his influence among terrorists and his link to "virtually every terrorist plot in the West since July 2010" are also admissible. Doc. 180, Facts 13-18; *see also* Doc. 191 at 4, 5 (arguing against admitting his own "opinion"). *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 667 (10th Cir. 2006) (rejecting argument that party opponent statement must comply with Rule 701 to be admissible because a party is "entitled to rely on his opponent's statements").

### 4.     The CTU Profile and Assessment is a business record that contains information informing the BOP's judgment about Chesser's risks.

The CTU Profile and Assessment, Doc. 181-3, is a business record, notwithstanding Chesser's conclusory statements suggesting otherwise. Doc. 180-2 ¶¶ 3, 5; Doc. 191 at 3. The Profile was prepared by CTU personnel, who use the document in monitoring Chesser's communications. *Id.* ¶ 6. But even if it were not a business record, and regardless of whether Chesser may dispute its accuracy,[3] it is admissible to show the information that informs the BOP's correctional judgment about Chesser's risks. Doc. 180-2 ¶ 5.

### 5.     The BOP did not withhold discovery from Chesser.

Chesser claims the BOP "denied" him discovery on its "main defense" of national security. Doc. 191 at 5. He mischaracterizes the facts. The BOP has consistently made clear that,

---

[3] Chesser points to no inaccurate information in the Profile, much of which is based on his own writings and statements, filings in his criminal case, and documents from his BOP files.

5

had Chesser not engaged in dangerous and disruptive *conduct* in the CMU, his status as a convicted terrorist would not have prompted a transfer to the ADX. Collins Decl., Doc. 67-3 ¶ 13 (stating that Chesser's ties to terrorism were not the "but-for reason" for his ADX referral, but rather "his actions and behavior"). The BOP's position on that point has never varied. At the same time, the BOP has made equally clear that it understands Chesser's actions in the CMU to have been motivated by a radicalized and dangerous ideology. Chesser's ADX referral recommendation, which was appended to Mr. Collins's declaration, specifically described how Chesser's "radicalized Islamic philosophy" had manifested itself in his increasingly radical behavior—including incendiary writings and an assault on another inmate—in the CMU. Doc. 67-11 at 3-6. The BOP produced additional discovery reiterating these concerns about Chesser's terrorist activities and proclivities, including the CTU Profile and Assessment.[4]

The BOP did not "lie" in discovery. There is no basis for excluding evidence about the BOP officials' correctional assessment of Chesser's national security risks.

## II.   Chesser's personal views of the record evidence do not create a genuine dispute.

Chesser does not dispute the BOP's facts, but merely provides his own views about what that evidence means and how the BOP ought to evaluate the risks. *See* Doc. 191 at 6-10. His view is that he is always misunderstood by the BOP, which should have known that his incendiary writings in the CMU were merely "deliberately shocking" and "satire-in-action"; that he "opposes *almost* all prison violence" and that his need to issue fatwas "has little to nothing to

---

[4] Chesser refers to an interrogatory response in which he claims the BOP was obliged "to cite any national security concerns regarding religious gatherings," Doc. 191 at 5, but that interrogatory did not seek the BOP's reasons for restrictions in B/B Unit or for Chesser personally. *See* Interrogatory No. 19, Doc. 193-22 at 5-6.

do with jihad"; that he has never asked a fatwa question "in prison" for the purpose of promoting violence; and that he poses only a minimal threat in a prison setting. Doc. 191 at 6-7 (emphasis added). He claims the BOP misconstrued his motivation for his conduct in the CMU, including his assault on another inmate and his devising a cipher that staff could not understand. *Id.* at 9-10. He speculates about the real reasons for his transfer to the ADX. *Id.* He makes no attempt to hide his derision and contempt for BOP officials he considers less intelligent and astute than him.

Chesser presents his views about how to evaluate security risks and how to manage B/B Unit, which differ from those of BOP correctional officials. *Id.* at 11. He opines about the relative security capabilities of the ADX and CMUs, expressing his view that CMUs are "more effective" from "a national security perspective." *Id.* at 7; *see also id.* at 17. He endorses a scheme that would require his being housed in proximity to Mamdouh Salim, an Islamic "scholar" who is on SAMs, dismissing the BOP's articulated concerns about the risks. *Id.*

Here, where the only dispute is about matters of professional judgment, the Court's "inferences must accord deference to the views of prison authorities"—not Chesser. *Beard v. Banks*, 548 U.S. 521, 529-30 (2006) (on summary judgment, court "must distinguish between evidence of disputed facts and disputed matters of professional judgment"); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (court "must accord substantial deference to the professional judgment of prison administrators"); *Werner v. McCotter*, 49 F.3d 1476, 1479-80 (10th Cir. 1995) (prison administrators receive deference under RFRA). The personal views and self-serving speculations of a convicted terrorist are insufficient to create a genuine dispute here, where correctional officials have presented a thorough, detailed record explaining the BOP's assessment of the measures adopted to address Chesser's risks. Because Chesser cannot "point to

sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard*, 548 U.S. at 530.

There would be extreme consequences if Chesser's personal views about how to manage a prison were sufficient to raise a genuine dispute. By that standard, any inmate who objects to any prison condition—from the inmate who complains about not having steak for dinner to the one who thinks there should be no locks on any prison door—would raise a triable issue. That is not the law. Chesser's opinions, generalizations, and speculations raise no genuine dispute.

### III. The BOP has a compelling national and institutional security interest in preventing an inveterate jihadist from inciting violence from prison.

The primary focus of Chesser's response is his argument that the BOP lacks a compelling interest in protecting national security because he has a First Amendment right to advocate jihad from prison. Doc. 191 at 12-17. Binding Tenth Circuit precedent holds that the BOP has a compelling interest in protecting national security. *Rezaq*, 677 F.3d at 1005. The cases Chesser cites—relating to criminal prosecutions or the speech of free citizens who are not convicted terrorists in the custody of the BOP—are irrelevant. Doc. 191 at 12-17; *see*, *e.g.*, *United States v. Lincoln*, 403 F.3d 703, 707-08 (9th Cir. 2005) (reversing conviction of inmate based on letter mailed from prison threatening the president). The government is not prosecuting Chesser for his "advocacy"; the BOP is regulating his conditions of confinement to prevent his "advocacy" from jeopardizing institutional and national security.

Chesser does not have a "right to advocate Jihadist views in prison." Doc. 191 at 16. The law is well established that the BOP may restrict speech as long as it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78 (1987). This deferential standard reflects the principle that "lawful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1984); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (inmates retain only those rights "not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system"). The BOP can take action to prevent Chesser from causing harm, especially to national security, without waiting for "concrete evidence" that harm will inevitably ensue, "based on informed judgment rather than concrete evidence." *Humanitarian Law*, 561 U.S. at 34-35.

There is nothing of a "post-hoc rationalization" in the evidentiary record demonstrating the BOP's compelling interest in preventing Chesser from harming national security. *See* Doc. 191 at 17. The Profile and Assessment of Chesser reveals the BOP's long-held understanding of his commitment to violent jihad that can result in conduct that threatens national security. Doc. 181-3 at 2-5 & *passim*. The BOP has consistently made clear to Chesser that it understands him to pose a threat to national security. Doc. 67-6 at 3-8 (ADX Hearing Administrator's report discussing his international terrorist activities); Doc. 67-8 (ADX referral discussing Chesser's terrorist acts and "his support of violence and terrorism"). The Court should reject Chesser's attempt to remove national security from the realm of the BOP's compelling interests.

**IV.    Chesser raises no genuine dispute that the BOP employs the least-restrictive means.**

The BOP provides a detailed assessment of why the conditions in B/B Unit are the least-restrictive that can be employed to manage Chesser's risks in its motion for summary judgment, Doc. 180 at 15-32, and in its response to Chesser's motion for summary judgment. Doc. 198 at 16-19. On the record here, Chesser's disagreement with correctional officials, based entirely on his personal views about security matters, does not create a genuine dispute that the BOP has

selected the least-restrictive means.

**V.      Chesser confirms that he did not exhaust his broad demands to teach and study.**

Chesser makes clear that what he actually wants is to live the extreme life of a "monastic," praying and studying constantly. Doc. 193 at 32. The cursory reference to "religious classes" in his administrative remedy, Doc. 180 Fact 78, does not remotely resemble his actual demand. The administrative process requires that the BOP receive fair notice of the inmate's demands, even if the remedy might have been denied. *See* Doc. 191 at 19. Nothing of Chesser-as-monastic is apparent in his remedies. His demands to teach and study are unexhausted. Doc. 180 at 34-35 & Facts 77-79.

**VI.     There is no genuine dispute about the reasons for Chesser's ADX transfer.**

Chesser persists in claiming that he was referred to the ADX because of "JDS and group prayer," Doc. 191 at 20, but his bare assertions are insufficient to create a genuine dispute in light of the detailed evidentiary record showing that Chesser was transferred because he posed serious security threats that could not be managed in an open-population CMU. Doc. 180 Facts 29-33. Chesser states that he will not pursue this claim at trial. Doc. 191 at 20. The Court should accept his statement and enter judgment in favor of the BOP.

## CONCLUSION

The Court should enter judgment in favor of the BOP on Claims III and IV.

Respectfully submitted on May 2, 2018.      ROBERT C. TROYER
United States Attorney
s/ *Susan Prose*
Susan Prose, Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100; Fax:  303-454-0404
E-mail: susan.prose@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on May 2, 2018, I directed that the foregoing document, along with copies of the unpublished cases cited therein, be placed in the United States mail addressed to the following non-CM/ECF participant:

Zachary A. Chesser
Reg. No. 76715-083
USP Florence – High
U.S. Penitentiary
P.O. Box 7500
Florence, CO 81226

I further directed that the foregoing document be hand delivered to Mr. Chesser on Thursday, May 3, 2018.

s/ *Susan Prose*
Susan Prose
United States Attorney's Office